## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| TEXAS INTERNATIONAL PRODUCE ASSOCIATION, and | § § § | |
| TEXAS VEGETABLE ASSOCIATION, | § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § | Case No. 2:25-cv-261 |
| OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, | § § § § | |
| UNITED STATES DEPARTMENT OF LABOR, | § § § | |
| LORI CHAVEZ-DEREMER, in her official capacity as Secretary of Labor, and | § § § § | |
| DAVID KEELING, in his official capacity as Assistant Secretary of Labor for Occupational Safety and Health, | § § § § § | |
| *Defendants.* | § § | |

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

## INTRODUCTION

1.    This case challenges Congress's delegation of legislative power to the Executive Branch in the Occupational Safety and Health Act (OSH Act) as a violation of the nondelegation doctrine. It raises one question: did Congress violate the

nondelegation doctrine when it delegated to the Secretary of Labor the power to set workplace safety standards under 29 U.S.C. § 655(b) (the safety standards delegation).[1] It authorizes her to issue "any" "reasonably necessary or appropriate" regulation for every employer in the United States that relates to "occupational safety or health." *Id.*; 29 U.S.C. § 652(8).

2.      The Constitution says, right at the beginning, that "[a]ll legislative Powers herein granted shall be vested" in Congress. U.S. Const. art. I, § 1. Because "[a]ll" granted legislative powers belong to that branch alone, the nondelegation doctrine forbids another from exercising *any* granted legislative powers. This is so even if Congress tries to delegate those powers to an administrative arm of the Executive Branch to exercise in its stead. *See Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 67, 68 (2015) (Thomas, J., concurring in the judgment) (explaining that because "[t]hese grants are exclusive . . . only the vested recipient of that power can perform it").

3.      Although Congress may permit agencies to "fill up the details" of a statutory scheme under the nondelegation doctrine, *Wayman v. Southard*, 23 U.S. 1, 43 (1825), it may not abdicate the core legislative power to decide what is lawful. *See Panama Refin. Co. v. Ryan*, 293 U.S. 388, 418–19 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935).

---

[1] Plaintiffs do not challenge the delegation found at 29 U.S.C. § 655(b)(5), which the Supreme Court has held permissible. *See generally Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607 (1980) (the *Benzene* case).

4.    The nondelegation doctrine requires Congress to provide meaningful boundaries on agency discretion. Vague guidance is not good enough. *Cf. FCC v. Consumers' Rsch.*, 606 U.S. 656, 687 (2025) ("Congress made clear the parameters of the programs.").

5.    Congress must be more precise when conferring powers that sweep broadly because "the degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001). In other words, more statutorily conferred power requires more clarity out of Congress.

6.    And even though "the Constitution does not speak of 'intelligible principles,'" *Whitman*, 531 U.S. at 487 (Thomas, J., concurring), since at least 1928, the intelligible principle test forms the judicial criterion for what types of delegations are permissible. *J. W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 409 (1928).

7.    The intelligible principle test demands that Congress make clear both "the general policy" for the agency to pursue and "the boundaries of [its] delegated authority." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946). It can set a boundary by (1) requiring a "finding by the President in the exercise of the authority to enact the prohibition," or (2) by "set[ting] up a standard for the President's action." *See Panama Refin.*, 293 U.S. at 415; *see also Schechter Poultry*, 295 U.S. at 530.

8.    The safety standards delegation contains no intelligible principle. It authorizes the Secretary of Labor to promulgate "any occupational safety or health standard" regulating every employer in the United States. 29 U.S.C. § 655(b). It does

not require the President (or any executive branch subordinate) to determine that certain situations have occurred before the executive branch can act. And it has "an absence of standards" that make it impossible for anyone to ascertain if the will of Congress has been obeyed. *Yakus v. United States*, 321 U.S. 414 (1944).

9.     The closest thing to a standard is found in the definition of "any occupational safety or health standard": "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). But this is far too vague to satisfy the nondelegation doctrine.

10.     Congress provided no explanation of what makes a health or safety standard "reasonably necessary" or "appropriate." For a statute "that affect[s] the entire national economy," *Whitman*, 531 U.S. at 475, this is not "sufficiently definite and precise" to allow anyone to determine whether OSHA has "conformed to those standards." *Yakus*, 321 U.S. at 426.

11.     Indeed, the safety standards delegation "may be the broadest delegation of power to an administrative agency found in the United States Code." *Allstates Refractory Contrs., LLC v. Su*, 144 S. Ct. 2490, 2490–91 (2024) (Thomas, J., dissenting from denial of certiorari); *see also Allstates Refractory Contrs., LLC v. Su*, 79 F.4th 755, 782–83 (6th Cir. 2023) (Nalbandian, J., dissenting) ("[N]o Supreme Court case has found that the phrasing of a law—i.e., the usage of the phrase 'reasonably

necessary or appropriate' in § 652(8)—alone creates an intelligible principle."); *see generally* Cass R. Sunstein, *Is OSHA Unconstitutional?*, 94 Va. L. Rev. 1407 (2008).

12.    If this delegation does not violate the nondelegation doctrine, then nothing does and the nondelegation doctrine is a dead letter. *Allstates*, 144 S. Ct. at 2491 (Thomas, J., dissenting from denial of certiorari) ("If this far-reaching grant of authority does not impermissibly confer legislative power on an agency, it is hard to imagine what would.").[2] Yet it cannot be a dead letter; the doctrine was just recently reaffirmed in *Consumers' Research*. 606 U.S. at 672.

13.    No decision binds this Court. Although the Sixth Circuit recently held that this exact delegation was permissible in a split decision and the Supreme Court denied certiorari there, *see Allstates*, 79 F.4th at 759, *cert. denied*, 144 S. Ct. 2490 (2024), neither that decision nor that of the D.C. Circuit, *see Nat'l Mar. Safety Ass'n v. OSHA*, 649 F.3d 743, 756 (D.C. Cir. 2011), *cert. denied*, 566 U.S. 936 (2012), is binding on this Court. *See Flores-Abarca v. Barr*, 937 F.3d 473, 484 n.5 (5th Cir. 2019) ("[W]e are bound by the precedent of the Supreme Court[;] we are not bound by another circuit's interpretation of that precedent."); *Plante v. Gonzalez*, 575 F.2d 1119, 1125 (5th Cir. 1978) ("Denial of a petition for certiorari, of course, carries no precedential weight.").

---

[2] Plaintiffs recognize that this Court is bound to apply the intelligible principle test. However, if the safety standards delegation satisfies the test, it will demonstrate that it is meaningless, and the Supreme Court should, at that point, reconsider its ongoing legitimacy. Plaintiffs hereby preserve the argument that the intelligible principle test is unconstitutional.

14.    This Court should hold otherwise and uphold the fundamental constitutional principle that only Congress may exercise its enumerated legislative powers. Plaintiffs respectfully ask this Court to declare the safety standards delegation found at 29 U.S.C. § 655(b) unconstitutional and issue an injunction against enforcement of the OSH Act to the extent such enforcement is predicated on the delegation found in 29 U.S.C. § 655(b).

## PARTIES

15.    Plaintiff Texas International Produce Association (TIPA) is an association that represents over 400 companies throughout the fresh fruit and vegetable supply chain and is headquartered in Mission, Texas.

16.    Plaintiff Texas Vegetable Association (TVA) is an association that represents companies throughout the fresh vegetable supply chain and is also headquartered in Mission, Texas.

17.    Defendant Occupational Safety and Health Administration (OSHA) is an agency within the Department of Labor (DOL). Congress delegated to OSHA the power to issue regulations implementing the OSH Act.

18.    Defendant DOL is a federal executive department. Congress gave DOL authority to administer the OSH Act, including the power to issue regulations.

19.    Defendant Lori Chavez-Deremer is the Secretary of Labor. She oversees DOL, including OSHA. She is sued in her official capacity.

20.    Defendant David Keeling is the Assistant Secretary of Labor for Occupational Safety and Health. He oversees OSHA. He is sued in his official capacity.

## JURISDICTION AND VENUE

21.    This case arises under the United States Constitution. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 491 n.2 (2010).

22.    The Court has jurisdiction over this complaint under 28 U.S.C. § 1331 (federal question) because this case presents substantial questions of federal law, specifically whether the OSH Act violates the nondelegation doctrine. Plaintiffs do not challenge the validity of any particular standard, *cf.* 29 U.S.C. § 655(f), or any enforcement order, *id.* § 660; *see also, e.g.*, *Free Enter. Fund v. PCAOB*, 537 F.3d 667, 671 (D.C. Cir. 2008), *aff'd in part, rev'd in part, and remanded*, 561 U.S. 477, 489 (2010); *Time Warner Ent. Co., L.P. v. FCC*, 93 F.3d 957, 965 (D.C. Cir. 1996).

23.    This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act) and Fed. R. Civ. P. 57.

24.    Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1) because a substantial part of the events giving rise to this claim occurred in this district, as both plaintiff associations have members in this judicial district who are injured by the challenged delegation of lawmaking power.

## BACKGROUND

**The Nondelegation Doctrine**

25.    As noted above, the Constitution vests every enumerated legislative power in Congress. Those powers cannot be handed over to executive-branch agencies to make law. This is the nondelegation doctrine, which "must do *something* to stop Congress from giving the President or executive agency a blank check to legislate." *Consumers' Rsch.*, 606 U.S. at 721 (Gorsuch, J., dissenting).

26.    When Congress broadly grants discretion to an agency to "fill up the details" as to how the law is implemented in a way that will "affect the entire national economy," Congress's obligation to explain what an agency may do is at its highest. *Id.* at 673 (quoting *Whitman*, 531 U.S. at 475). Such an "intelligible principle" must describe (1) the general policy aims of the law and (2) the boundaries of the agency's authority. *Id.*

27.    The OSH Act, 29 U.S.C. § 655(b), is a blank check from Congress with no meaningful restriction on what OSHA may do. It is "little more than an instruction to go forth and do good." *Id.* at 741 (Gorsuch, J., dissenting). That is why the Court should declare it violates the constitutional separation of powers.

**Congress's Delegation of Legislative Power to OSHA**

28.    Congress created OSHA in 1970 to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b).

29.    In the OSH Act, Congress "authoriz[ed] the Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce." 29 U.S.C. § 651(b)(3); *see also* 29 U.S.C. § 655(b).[3]

30.    The Secretary delegated this authority to the Assistant Secretary of Labor for Occupational Health and Safety, who serves as the head of OSHA. *See* 29 C.F.R. § 1911.

31.    Congress delegated the legislative power to OSHA to "promulgate, modify, or revoke any occupational safety or health standard." *Id.*

32.    An "occupational safety and health standard" is defined as "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8).

33.    OSHA's delegated power is broad enough to cover the entire national economy. Every "employer," meaning "person engaged in a business affecting commerce who has employees," 29 U.S.C. § 652(5), "shall comply with occupational safety and health standards promulgated under this chapter." 29 U.S.C. § 654(a)(2).

34.    Civil and criminal penalties may be imposed on employers who fail to comply with the statutory mandate. 29 U.S.C. § 666.

---

[3] A separate provision authorizes the Secretary to "promulgat[e] standards dealing with toxic materials or harmful physical agents." 29 U.S.C. § 655(b)(5); *see, e.g.*, 29 C.F.R. § 1910 subpart Z. The standards promulgated pursuant to this delegation are known as "health" standards. Plaintiffs do not challenge this delegation. They challenge only the delegation in the umbrella sentence of 29 U.S.C. § 655(b).

**OSHA's Use of the Delegated Powers**

35.    OSHA has used the delegation to promulgate thousands of pages of regulations applicable to every employer.

36.    For example, OSHA requires that an employee who operates a tractor be briefed both when they are hired and at least annually about safety basics when operating a tractor. 29 C.F.R. § 1928.51, appx. A (Tractor Rule).

37.    The Tractor Rule includes nine pieces of extremely basic information that employers must communicate to their tractor-driving employees at least annually:

1.    Securely fasten your seat belt if the tractor has a [Roll-Over Protective Structure].

2.    Where possible, avoid operating the tractor near ditches, embankments, and holes.

3.    Reduce speed when turning, crossing slopes, and on rough, slick, or muddy surfaces.

4.    Stay off slopes too steep for safe operation.

5.    Watch where you are going, especially at row ends, on roads, and around trees.

6.    Do not permit others to ride.

7.    Operate the tractor smoothly—no jerky turns, starts, or stops.

8.    Hitch only to the drawbar and hitch points recommended by tractor manufacturers.

9.    When tractor is stopped, set brakes securely and use park lock if available.

29 C.F.R. § 1928.51, appx. A.

38.    This paternalistic regulation fails to consider the experience level of the employee, how many times they have received the training, or the necessity of the training.

39.    The OSHA regulation codified at 29 C.F.R. § 1910.151 (First-Aid Kit Rule) provides: "In the absence of an infirmary, clinic, or hospital in near proximity to the workplace which is used for the treatment of all injured employees, a person or persons shall be adequately trained to render first aid. Adequate first aid supplies shall be readily available."

40.    The First-Aid Kit Rule contains no consideration of the likelihood or frequency of injuries when requiring all employers to comply with it.

41.    OSHA's regulations require that all employers either maintain portable fire extinguishers or maintain a written fire safety policy which requires the immediate and total evacuation of employees from the workplace upon the sounding of a fire alarm signal and which includes an emergency action plan and a fire prevention plan, along with designating and training an employee to assist in the safe and orderly evacuation of other employees. *See* 29 C.F.R. § 1910.157(c)(1) (Portable Fire Extinguisher Rule); 29 C.F.R. § 1910.38 (Emergency Action Plan Rule); 29 C.F.R. § 1910.39 (Fire Prevention Plan Rule).

42.    These regulations contain no consideration of the likelihood of fire, the size of the business in question, the difficulty in evacuating employees, or the necessity of detailed written plans. Thus, a small office is subject to the same regulations as a multi-story office building.

## INJURY TO PLAINTIFFS

43.    Plaintiffs and their members are injured by these OSHA regulations promulgated under OSHA's safety standards delegation found in 29 U.S.C. § 655(b)

in multiple ways as explained below. These injuries are all fairly traceable to § 655(b). This Court can redress these injuries by declaring § 655(b) unconstitutional and enjoining its enforcement.

44.    First, Plaintiffs and their members are injured because they are "an object of [the] regulation." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015). When "the plaintiff is himself an object of the action," "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992).

45.    Both Plaintiffs, as well as many of their members, are the object of the OSH Act. They are employers "engaged in a business affecting commerce who has employees," 29 U.S.C. § 652(5), and they therefore must "comply with occupational safety and health standards promulgated under this chapter," 29 U.S.C. § 654(a)(2). Both Plaintiffs and their members have worked, and will continue to work, in industries and situations in which they must comply with the OSH Act.

46.    Both Plaintiffs are required to comply with the First-Aid Kit Rule, the Portable Fire Extinguisher Rule, the Emergency Action Plan Rule, and the Fire Prevention Plan Rule, and are thus objects of the regulations.

47.    Many of Plaintiffs' members are required to comply with the Tractor Rule and are thus objects of the regulation.

48.    Second, Plaintiffs and their members are injured because they are subjected to an increased regulatory burden. *See Contender Farms, L.L.P.*, 258 F.3d

at 266 ("An increased regulatory burden typically satisfies the injury in fact requirement.").

49.    Because of the Tractor Rule, many of Plaintiffs' members have been forced to meet with their tractor-driving employees at least annually to provide them the list of nine safety requirements.

50.    Because of the Portable Fire Extinguisher Rule, the Emergency Action Plan Rule, and the Fire Prevention Plan Rule, Plaintiffs have been forced to generate, revise, and update written emergency action and fire prevention plans, in addition to training employees on them.

51.    Because of the First-Aid Kit Rule, Plaintiffs have been forced to either maintain a first-aid kit on site along with a trained provider or commit to having all employee injuries treated at a nearby facility.

52.    Both Plaintiffs and their members have been forced to document their compliance with these rules in case they need to prove their compliance in response to an inspection.

53.    Third, Plaintiffs and their members are injured through compliance-related pocketbook injuries. *See, e.g., Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 261–62 (6th Cir. 2009) (holding that "the cost of compliance" with challenged federal requirements is "a cognizable injury in fact").

13

54.     Because of the Tractor Rule, Plaintiffs' members are forced to regularly pay to train their employees and forced to pay their employees for the time they spend being trained.

55.     Because of the Portable Fire Extinguisher Rule, the Emergency Action Plan Rule, and the Fire Prevention Plan Rule, Plaintiffs have been forced to pay for trainings, for employees' time to attend them, for compliance documentation, and to produce written plans.

56.     Fourth, Plaintiffs' compliance with various OSHA standards injures them because, absent the legal obligation to comply with the standards, Plaintiffs would not. *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019) (quoting *Contender Farms*, 779 F.3d at 266).

57.     Because of the Tractor Rule, Plaintiffs' members are forced to regularly train all their employees in extremely basic guidelines for operating a tractor, rather than training only those employees who need it, as they would do if they could.

58.     Because of the Portable Fire Extinguisher Rule, the Emergency Action Plan Rule, and the Fire Prevention Plan Rule, Plaintiffs must maintain detailed and costly written plans that would otherwise be replaced by common sense evacuation instructions for their small offices.

59.     Because of the First-Aid Kit Rule, Plaintiffs have been forced to commit to treating all employee injuries at a specific nearby hospital or maintaining a first-aid kit and a trained first-aid provider in its office, despite the fact that no injuries have occurred or are likely to occur in their workplace. In the absence of the First-

Aid Kit Rule, Plaintiffs would keep a small first-aid kit in case of minor injuries, but nothing else, and would use the nearby hospital in case of a rare serious injury.

60.    Without these regulations, Plaintiffs and their members would remain committed to the safety of their workers and workplaces. But they would be free to ensure that safety in ways more tailored to their specific businesses. OSHA's one-size-fits-all regulation does not fit Plaintiffs' needs—or the needs of their members—well.

61.    Plaintiffs' and their members' injuries are traceable to the legislative delegation of power in the OSH Act because the Secretary promulgated the offending regulations under authority granted by the OSH Act.

62.    In the absence of Congress's delegation of legislative authority to the Secretary, the Secretary could not promulgate occupational safety standards under 29 U.S.C. § 655(b) and 29 U.S.C. § 652(8), and Plaintiffs and their members would not have to spend time and money complying with any occupational safety standards issued under 29 U.S.C. § 655(b) and 29 U.S.C. § 652(8), face the substantial risk of an OSHA enforcement action, or be exposed to civil and criminal penalties for non-compliance.

63.    This Court can redress Plaintiffs' and their members' injuries by declaring that the OSH Act violates Article I of the Constitution and enjoining the Secretary and his subordinates from enforcing 29 U.S.C. § 654(a)(2) and 29 U.S.C. § 666. That injunction against enforcement of the statutory mandate would relieve Plaintiffs and their members of their obligation to comply with OSHA's safety

standards issued under 29 U.S.C. § 655(b) and 29 U.S.C. § 652(8) and prevent OSHA from imposing civil and criminal penalties for non-compliance.

## CAUSE OF ACTION

### CLAIM FOR RELIEF
### (Violation of the Separation of Powers)

64.     Plaintiffs incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

65.     Plaintiffs allege that 29 U.S.C. § 655(b) violates Article I of the U.S. Constitution.

66.     Plaintiffs' cause of action is "an implied private right of action directly under the Constitution to challenge governmental action under . . . separation-of-powers principles." *Free Enter. Fund*, 561 U.S. at 491 n.2. This Court has inherent equitable power to enjoin federal officials from enforcing an unconstitutional law. *Id.* "[W]henever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Collins v. Yellen*, 594 U.S. 220, 245 (2021).

67.     29 U.S.C. § 654(a)(2) requires employers to comply with OSHA's safety standards issued under 29 U.S.C. § 655(b) and 29 U.S.C. § 652(8).

68.     29 U.S.C. § 666 imposes civil and criminal penalties on employers for failing to comply with the statutory mandate to follow OSHA's safety standards issued under 29 U.S.C. § 655(b) and 29 U.S.C. § 652(8).

69.     Plaintiffs and their members are subject to OSHA's safety standards issued under 29 U.S.C. § 655(b).

16

70.     Plaintiffs and their members are subject to civil and criminal penalties if they violate OSHA's safety standards.

71.     The safety standards delegation violates the nondelegation doctrine by delegating legislative power to the Secretary of Labor to make "reasonably necessary" or "appropriate" health and safety rules without providing any intelligible principle about what is "reasonably necessary" or "appropriate." *Cf. Allstates Refractory*, 79 F.4th at 782–83 (6th Cir. 2023) (Nalbandian, J., dissenting) ("[N]o Supreme Court case has found that the phrasing of a law—i.e., the usage of the phrase 'reasonably necessary or appropriate' in § 652(8)—alone creates an intelligible principle.").

72.     The safety standards delegation assigned legislative power from Congress to OSHA, an agency in the Executive Branch.

73.     Given the scope of power—the power to fine and incarcerate, affecting employers everywhere—Congress must provide a great deal of concrete guidance to constrain OSHA.

74.     Plaintiffs agree that the OSH Act barely manages to set a "general policy" that may be satisfactory under current law. *See* 29 U.S.C. § 651; *see also Schechter Poultry*, 295 U.S. at 531 n.9; *Panama Refining*, 293 U.S. at 418. But this general policy alone cannot support the existence of an intelligible principle.

75.     Congress failed to create an intelligible principle because it did not set "the boundaries of [OSHA's] delegated authority" in the safety standards delegation. *See id.*

17

76.    Congress can set a boundary by (1) requiring a "finding by the President [or any Executive Branch official] in the exercise of the authority to enact the prohibition," or (2) by "set[ting] up a standard for the President's action." *Panama Refin.*, 293 U.S. at 415; *see Schechter Poultry*, 295 U.S. at 530.

77.    Congress did neither when it delegated to the Secretary of Labor the power to issue safety standards in § 655(b).

78.    The safety standards delegation does not require a finding by the President or any Executive Branch official in the exercise of his or her authority before regulations could be issued.

79.    Also, the safety standards delegation lacks a standard for the President or any Executive branch official that is "sufficiently definite and precise" to guide OSHA's discretion. *Yakus*, 321 U.S. at 426. It merely authorizes the Secretary of Labor to issue "any" "reasonably necessary or appropriate" regulation for every employer in the United States that relates to "occupational safety or health." 29 U.S.C. § 655(b); 29 U.S.C. § 652(8). This is insufficient to furnish an intelligible principle.

80.    The definitions in the OSH Act do not operate as a standard or require meaningful findings either. They only require that OSHA adopt "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). That lone definition is the "only evident source of constraint" on the Secretary's authority to

18

issue safety standards. *Int'l Union, UAW v. OSHA*, 938 F.2d 1310, 1316 (1991). This definition's capacious nature does not operate to provide any kind of a constraint on the open-ended safety standards delegation.

81.     The safety standards delegation therefore fails the intelligible principle test and violates the Nondelegation Doctrine. It is nothing more "than an instruction to go forth and do good." *Consumers' Rsch.*, 606 U.S. at 741 (Gorsuch, J., dissenting).

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court:

A.     Enter a declaratory judgment that the OSH Act's safety standards delegation, 29 U.S.C. § 655(b), and regulations promulgated under it, are unconstitutional delegations of legislative power barred by Article I of the United States Constitution;

B.     Enter an order preliminarily and permanently enjoining Defendants from enforcing 29 U.S.C. § 655(b) and regulations promulgated under it through 29 U.S.C. § 654(a)(2), 29 U.S.C. § 666, or any other means;

C.     Award Plaintiffs such costs and attorneys' fees as allowed by law;

D.     Grant such other and further relief as the Court deems appropriate.

Dated: <u>December 3, 2025</u>.              Respectfully submitted,

                                       <u>/s/ Benjamin I. B. Isgur</u>
                                       Benjamin I. B. Isgur
                                         Virginia Bar No. 98812
                                       James V. F. Dickey
                                         Minnesota Bar No. 393613
                                       SOUTHEASTERN LEGAL FOUNDATION

19

560 W. Crossville Road, Suite 104
Roswell, GA 30075
Tel.: (770) 977-2131
bisgur@southeasternlegal.org
jdickey@southeasternlegal.org

Robert Henneke
   Texas Bar No. 24046058
Chance Weldon
   Texas Bar No. 24076767
Matthew Chiarizio
   Texas Bar No. 24087294
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Phone: (512) 472-2700
Fax: (512) 472-2728
rhenneke@texaspolicy.com
cweldon@texaspolicy.com
mchiarizio@texaspolicy.com

*Attorneys for Plaintiffs*