## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| TEXAS INTERNATIONAL PRODUCE ASSOCIATION, and | § § § | |
| TEXAS VEGETABLE ASSOCIATION, | § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § | Case No. 2:25-cv-261-Z |
| OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, | § § § | |
| UNITED STATES DEPARTMENT OF LABOR, | § § § § | |
| LORI CHAVEZ-DEREMER, in her official capacity as Secretary of Labor, and | § § § § | |
| DAVID KEELING, in his official capacity as Assistant Secretary of Labor for Occupational Safety and Health, | § § § § § | |
| *Defendants.* | § § | |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 2

    A.    OSHA ......................................................................................... 2

    B.    Plaintiffs ................................................................................... 4

    C.    This Action ............................................................................... 5

STANDARD OF REVIEW .................................................................................... 8

ARGUMENT ...................................................................................................... 10

I.    The Constitution bars Congress from delegating legislative power .............. 10

    A.    Delegations have only been upheld when Congress provides an
intelligible principle to limit executive branch discretion ................... 11

    B.    Recent Supreme Court precedent shows that the
nondelegation doctrine is alive and well ............................................... 14

        1.    Unlike the safety standards delegation, the universal
services program provides a clear policy the FCC must
pursue .................................................................................... 15

        2.    Unlike the safety standards delegation, the universal
services program provides specific statutory boundaries
on the FCC's authority .......................................................... 15

II.    OSHA's safety standards authority lacks an intelligible principle .............. 17

    A.    The OSH Act's vague policy statements provide little guidance
to the agency ......................................................................................... 18

    B.    Unlike in *Consumers' Research*, Congress set no statutory
boundaries for OSHA in the safety standards delegation ..................... 18

        1.    Congress did not limit OSHA's authority to issue safety
standards ................................................................................ 19

        2.    Congress does not require OSHA to make any findings
before using its authority ....................................................... 21

    C.    Congress's failure to provide OSHA an intelligible principle for
safety standards violates the Constitution's separation of
powers .................................................................................................... 22

    D.    OSHA has used its improperly delegated authority broadly .............. 23

E.    Neither OSHA nor the courts should read an absent intelligible principle into the Act ........................................................... 24

    1.    OSHA cannot cure the nondelegation problem by curbing its own authority ............................................................ 24

    2.    Courts may also not rewrite the statute to provide a missing intelligible principle ........................................................ 25

III.    If the safety standards delegation is held to contain an intelligible principle, then the Supreme Court should revisit the intelligible principle test ........................................................................................... 27

IV.    Plaintiffs are entitled to declaratory and injunctive relief based on the invalid delegation of legislative power to OSHA ..................................... 28

    A.    Declaratory relief is appropriate to remedy constitutional violations ................................................................................... 28

    B.    Injunctive relief barring further enforcement of OSHA's unconstitutional regulations is also appropriate ................................. 29

CONCLUSION ..................................................................................................... 31

TABLE OF AUTHORITIES

*Cases:*                                                      *Page(s):*

*A.L.A. Schechter Poultry Corp. v. United States,*
   295 U.S. 495 (1935) ........................................................................ 12, 15, 18, 19
*AHA v. HHS,*
   Civil Action No. 18-2112, 2018 U.S. Dist. LEXIS 187624
   (D.D.C. Nov. 2, 2018) .................................................................................... 9
*All. for Hippocratic Med. v. FDA,*
   78 F.4th 210 (5th Cir. 2023) ....................................................................... 31
*Allstates Refractory Contrs., LLC v. Su,*
   79 F.4th 755 (6th Cir. 2023) ....................................................... 19, 26, 27, passim
*Am. Power & Light Co. v. SEC,*
   329 U.S. 90 (1946) ....................................................................................... 12
*Am. Textile Mfrs. Inst. v. Donovan,*
   452 U.S. 490 (1981) ....................................................................................... 3
*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ....................................................................................... 8
*Beras v. Johnson,*
   978 F.3d 246 (5th Cir. 2020) ....................................................................... 27
*Bond v. United States,*
   564 U.S. 211 (2011) ..................................................................................... 29
*Book People, Inc. v. Wong,*
   81 F.4th 318 (5th Cir. 2024) ....................................................................... 31
*BST Holdings, LLC v. OSHA,*
   17 F.4th 604 (5th Cir. 2021) .................................................................. 30, 31
*Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.,*
   741 F. Supp. 3d 515 (N.D. Tex. 2024) ........................................................ 30
*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ....................................................................................... 8
*Collins v. Yellen,*
   594 U.S. 220 (2021) ....................................................................................... 5
*Contender Farms, L.L.P. v. U.S. Dep't of Agric.,*
   779 F.3d 258 (5th Cir. 2015) ..................................................................... 6, 7
*Crown Castle Fiber, L.L.C. v. City of Pasadena,*
   76 F.4th 425 (5th Cir. 2023) ......................................................................... 9
*Ctr. for Indiv. Freedom v. Carmouche,*
   449 F.3d 655 (5th Cir. 2006) ......................................................................... 9
*Czyzewski v. Jevic Holding Corp.,*
   580 U.S. 451 (2017) ....................................................................................... 7

*Dodd v. United States*,
    545 U.S. 353 (2005) ........................................................................ 27
*DOT v. Ass'n of Am. R.R.*,
    575 U.S. 43 (2015) .......................................................................... 28
*Elrod v. Burns*,
    427 U.S. 347 (1976) ........................................................................ 30
*FCC v. Consumers' Rsch.*,
    606 U.S. 656 (2025) ............................................ 10, 12, 22, 23
*Free Enter. Fund. v. Pub. Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010) ............................................................. 5, 29
*Gundy v. U.S.*,
    588 U.S. 128 (2019) ................................................................. 19, 22
*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) .......................................................................... 27
*Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*,
    448 U.S. 607 (1980) ............................................................. 3, 4, 21
*J. W. Hampton, Jr., & Co. v. United States*,
    276 U.S. 394 (1928) ........................................................................ 11
*Johnson v. Cooper T. Smith Stevedoring Co.*,
    74 F.4th 268 (5th Cir. 2023) ........................................................... 9
*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022) ................................................ 30, 31
*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .......................................................................... 6
*Marshall Cty. Health Care Auth. v. Shalala*,
    988 F.2d 1221 (D.C. Cir. 1993) ....................................................... 9
*Marshall Field & Co. v. Clark*,
    143 U.S. 649 (1892) ........................................................................ 10
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .......................................................................... 8
*McCarthan v. Dir. of Goodwill Indus.-Suncoast*,
    851 F.3d 1076 (11th Cir. 2017) ..................................................... 27
*McFaul v. Valenzuela*,
    684 F.3d 564 (5th Cir. 2012) ........................................................... 9
*Mistretta v. U.S.*,
    488 U.S. 361 (1989) ................................................................. 19, 26
*Myers v. United States*,
    272 U.S. 52 (1926) ......................................................................... 10
*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................. 9, 30

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001) ............................................................. 28
*Opp Cotton Mills, Inc. v. Adm'r of Wage and Hour Div., Dep't of Labor,*
    312 U.S. 126 (1941) ................................................... 12, 16, 21, 22
*Panama Refin. Co. v. Ryan,*
    293 U.S. 388 (1935) ........................................... 15, 16, 19, passim
*Radio Corp of Am. v. United States,*
    341 U.S. 412 (1951) .......................................................................... 21
*Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.,*
    584 F.3d 253 (6th Cir. 2009) ............................................................. 7
*Space Exploration Techs. Corp. v. NLRB,*
    151 F.4th 761 (5th Cir. 2025) ............................................................ 9
*State v. Biden,*
    10 F.4th 538 (5th Cir. 2021) ............................................................ 31
*Sunshine Anthracite Coal Co. v. Adkins,*
    310 U.S. 381 (1940) ......................................................................... 19
*Tanzin v. Tanvir,*
    592 U.S. 43 (2020) ........................................................................... 22
*Tex. Top Cop Shop, Inc. v. Garland,*
    758 F. Supp. 3d 607 (E.D. Tex. 2024) ............................................ 30
*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) ............................................................. 8
*Tiger Lily, LLC v. U.S. HUD,*
    5 F.4th 666 (6th Cir. 2021) .............................................................. 10
*Wages & White Lion Invs., LLC v. FDA,*
    16 F.4th 1130 (5th Cir. 2021) .......................................................... 30
*Wayman v. Southard,*
    23 U.S. 1 (1825) ............................................................................... 11
*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) ........................................ 1, 10, 11, 12, 23, 26
*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................... 9
*Yakus v. United States,*
    321 U.S. 414 (1944) ................................................................... 19, 22

**Statutes:**

28 U.S.C. § 2201(a) ................................................................................ 28
29 U.S.C. § 651(b) ........................................................................... 17, 18
29 U.S.C. § 652(5) ................................................................................... 6
29 U.S.C. § 652(8) .................................................................... 1, 5, 7, passim
29 U.S.C. § 654(a)(2) .................................................................... 2, 6, 18

29 U.S.C. § 655(a), (b), (c)29 U.S.C. § 655(a), (b), (c) ................................................... 3
29 U.S.C. § 655(b) ...........................................................................2, 4, 7, passim
29 U.S.C. § 666................................................................................. 3, 18, 27, 30
29 U.S.C. § 666(e)........................................................................................ 3, 19
47 U.S.C. § 151 .................................................................................................. 18
47 U.S.C. § 254(c)(1)(B) .................................................................................. 16
5 U.S.C. § 702 ................................................................................................... 30

## Other Authorities:

1 Annals of Congress 581 (1791) (James Madison) ................................................. 10
Antonin Scalia & Bryan A. Garner, Reading Law:
    The Interpretation of Legal Texts 112 (2012) .......................................... 19
Cass Sunstein, *Is OSHA Unconstitutional?*,
    94 Va. L. Rev. 1407, 1448 (2008) ............................................................. 21, 22
Chad Squitieri, *Towards Nondelegation Doctrines*,
    86 Mo. L. Rev. 1239, 1245–48 (2022) ............................................................. 11
Felix Frankfurter, *Some Reflections on the Reading of Statutes*,
    47 Colum. L. Rev. 527, 533 (1947) ................................................................... 27
Ilan Wurman, *Nondelegation at the Founding*,
    130 Yale L.J. 1490, 1506 (2021) ....................................................................... 11
Lin-Manuel Miranda, *Cabinet Battle #1*, Hamilton:
    An American Musical (2015) ............................................................................. 10
OSHA, Industry Profile for OSHA Standard Results,
    https://shorturl.at/3ubFe (last visited Nov. 14, 2025).......................................4
OSHA, Occupational Safety and Health Administration (OSHA) Enforcement,
    https://shorturl.at/3AzMF (last visited Nov. 14, 2025).....................................4
U.S. Dep't of Labor, 2025 Annual Adjustments to OSHA Civil Penalties
    (Jan 7, 2025), https://www.osha.gov/memos/2025-01-07/2025-annual-
    adjustments-osha-civil-penalties ..................................................................... 3

## Rules:

Fed. R. Civ. P. 56(a) ............................................................................................ 8

## Regulations:

29 C.F.R. § 1910.132 ...................................................................................... 4, 24
29 C.F.R. § 1910.151 .......................................................................................... 6
29 C.F.R. § 1910.157(c)(1).................................................................................. 6
29 C.F.R. § 1910.23(b)...................................................................................... 4, 24
29 C.F.R. § 1910.38 ............................................................................................ 6
29 C.F.R. § 1910.39 ............................................................................................ 6
29 C.F.R. § 1928.51 ....................................................................................... 6, 20

29 C.F.R. § 1928.51(d)...............................................................................................4
90 Fed. Reg. 27,878 (June 30, 2025) .....................................................................2

**Constitutional Provisions:**

U.S. Const., art. I, § 1 .............................................................................................1

## INTRODUCTION

"All legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const., art. I, § 1. "This text permits no delegation of those powers," and so when Congress confers decisionmaking authority on an agency, "*Congress* must lay down by legislative act an intelligible principle to which the person or body to [act] is directed to conform." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) (citation modified).

But in the Occupational Safety and Health (OSH) Act, Congress improperly delegated unfettered power to the Occupational Safety and Health Administration (OSHA) with nothing resembling an intelligible principle. The Act allows OSHA to bind nearly every employer in the United States with "any occupational safety or health standard." Congress only limited OSHA's authority to standards "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." Essentially, no limitation. The Supreme Court has never upheld a delegation like this one.

The Act provides no guidance on what makes a rule "reasonably necessary or appropriate." Instead, it leaves the full authority to make vast policy determinations affecting every American workplace to bureaucrats. The Constitution, however, carefully separated powers. The Framers entrusted policy determinations—and that is what workplace safety standards are—to Congress alone. And it cannot delegate that authority away with powers this vast to avoid making tough decisions, not without a concrete standard.

1

As a result, bureaucrats now legislate workplace safety standards to nearly every employer in America. Despite no need for a Washington, DC, mandate before creating a safe workplace, Plaintiffs Texas International Produce Association (TIPA) and Texas Vegetable Association (TVA) are forced to prepare detailed exit plans for their office space. Likewise, their members—experienced agricultural producers— must "educate" experienced farmhands each year not to take fast turns with tractors.

The safety standards delegation violates the nondelegation doctrine. Plaintiffs ask the Court to enter a declaration that OSHA's safety standards authority violates the nondelegation doctrine and issue a permanent injunction barring OSHA from enforcing all permanent safety standards.

BACKGROUND

**A.    OSHA**

Congress enacted the Occupational Safety and Health Act in 1970. It delegates authority to the Secretary of Labor to "promulgate, modify, or revoke any occupational safety or health standard." 29 U.S.C. § 655(b). The Secretary has delegated that power to OSHA. *See* Delegation of Authority and Assignment of Responsibility to the Assistant Secretary for Occupational Safety and Health, 90 Fed. Reg. 27,878 (June 30, 2025).

Under the Act, every "employer"—that is, any "person engaged in a business affecting commerce who has employees"[1]—must comply with OSHA-promulgated occupational safety and health standards. 29 U.S.C. § 654(a)(2). An employer that

---

[1] The federal government and state and local governments are excepted as "employers." 29 U.S.C. § 652(5).

violates OSHA's standards is subject to various civil and criminal penalties, including fines of up to $165,514 per violation for willful or repeated violations. 29 U.S.C. § 666; U.S. Dep't of Labor, 2025 Annual Adjustments to OSHA Civil Penalties (Jan 7, 2025), https://www.osha.gov/memos/2025-01-07/2025-annual-adjustments-osha-civil-penalties. Certain violations can result in imprisonment for up to one year. 29 U.S.C. § 666(e).

The Act empowers OSHA to promulgate three main categories of workplace safety regulations: (1) national consensus standards, (2) emergency temporary standards, and (3) permanent standards. *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 640 n.45 (1980) (*Benzene*); *see also* 29 U.S.C. §§ 655(a), (b), (c). Only one aspect of the permanent standards is challenged here.

OSHA issues permanent standards under 29 U.S.C. § 655(b): "The Secretary may by rule promulgate, modify, or revoke any occupational safety or health standard . . . ." Permanent standards are further divided into general safety standards and health standards. *Am. Textile Mfrs. Inst. v. Donovan*, 452 U.S. 490, 512 (1981) (*Cotton Dust*) (citing *Benzene*, 448 U.S. at 649 n.54) (plurality opinion). OSHA issues general safety standards under § 655(b). Health standards are also subject to § 655(b)(5), which imposes separate and additional requirements on standards dealing with toxic materials and harmful physical agents. Plaintiffs do not challenge those. They only challenge OSHA's authority to impose general safety standards under § 655(b) ("safety standards"), not those relating to toxic or harmful physical agents under § 655(b)(5).

3

The Act provides no guidance or limitations on OSHA's authority to issue safety standards under § 655(b). The only "substantive criteria" for these safety standards comes from the definition of an "occupational safety and health standard" in § 652(8). *Benzene*, 448 U.S. at 640 n.45. It provides that standards must be "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8); *Benzene*, 448 U.S. at 642. That is all.

Since 1970, OSHA has used its authority to adopt countless workplace safety standards. Safety standards cover matters from permissible distance between ladder rungs and stepstool steps, 29 C.F.R. § 1910.23(b), to personal protective equipment requirements, *id.* § 1910.132, to how often an employer must train employees on proper tractor seatbelt use, *id.* § 1928.51(d). OSHA rigorously enforces its safety standards through inspections, citations, and penalties. In fiscal year 2024, OSHA conducted 34,625 inspections. OSHA, Occupational Safety and Health Administration (OSHA) Enforcement, https://shorturl.at/3AzMF (last visited Nov. 14, 2025). Between October 2024 and September 2025, OSHA issued 49,548 citations, assessing penalties of more than $210 million against U.S. employers. OSHA, Industry Profile for OSHA Standard Results, https://shorturl.at/3ubFe (last visited Nov. 14, 2025).

### B.    Plaintiffs

TIPA is a non-profit organization which advocates, promotes, educates, and represents on behalf of the $13 billion of the fresh fruits and vegetables industry that are either grown in Texas or consider Texas their first point of arrival in the U.S. for distribution. Galeazzi Decl. ¶ 6. TVA represents a broad coalition of Texas growers

and shippers who produce domestically grown vegetables across the state. *Id.* ¶ 7. TVA advocates on behalf of these producers, who collectively farm tens of thousands of acres and contribute substantially to the state's food supply and rural economy. *Id.* The association works to support the long-term viability of Texas vegetable production by engaging on issues related to water availability, supply-chain integrity, crop quality, labor, and regulatory policy. *Id.* As a non-profit organization, TVA serves as a unified voice for Texas vegetable growers, promoting their interests at the state and federal levels and supporting initiatives that enhance production, efficiency, and market competitiveness. *Id.*

### C.    This Action

Plaintiffs' cause of action is "an implied private right of action directly under the Constitution to challenge governmental action under . . . separation-of-powers principles." *Free Enter. Fund. v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010). This Court has inherent equitable power to enjoin federal officials from enforcing an unconstitutional law. *Id.* "[W]henever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Collins v. Yellen*, 594 U.S. 220, 245 (2021).

The safety standards delegation violates the nondelegation doctrine of Article I of the Constitution by delegating legislative power through § 655(b) to the Secretary of Labor to make "reasonably necessary or appropriate" health and safety rules without providing any intelligible principle about what is "reasonably necessary or appropriate." The only standard to cabin OSHA's discretion is found in the definition of an "occupational safety and health standard" at § 652(8). But since it only requires

standards to be "reasonably necessary or appropriate to provide safe or healthful employment and places of employment," it is far more open-ended than any delegation ever upheld.

Both associations and their members are employers subject to OSHA safety standards. Plaintiffs in their Complaint, and Mr. Dante Galeazzi, the chief executive of both TIPA and TVA, in his declaration, detail five specific examples of OSHA regulations with which Plaintiffs and their members are required to comply—the First-Aid Kit Rule, 29 C.F.R. § 1910.151, the Portable Fire Extinguisher Rule, 29 C.F.R. § 1910.157(c)(1), the Emergency Action Plan Rule, 29 C.F.R. § 1910.38, the Fire Prevention Plan Rule, 29 C.F.R. § 1910.39, and the Tractor Rule, 29 C.F.R. § 1928.51, appx. A. *See* Compl., ECF No. 1, ¶¶ 35–61; Galeazzi Decl. ¶¶ 10–32. Accordingly, Plaintiffs and their members are injured in four distinct ways.

First, Plaintiffs and their members are injured because they are "an object of [the] regulation." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992) (explaining that when "the plaintiff is himself an object of the action," "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it"). Plaintiffs and their members are "employers" under 29 U.S.C. § 652(5). They therefore must "comply with occupational safety and health standards promulgated under this chapter." 29 U.S.C. § 654(a)(2). As objects of the challenged regulations, Plaintiffs and their members are injured by them. *See* Galeazzi Decl. ¶ 9.

6

Second, Plaintiffs and their members are injured because they must comply with an increased regulatory burden by the various OSHA safety standards. *See Contender Farms, L.L.P.*, 258 F.3d at 266 ("An increased regulatory burden typically satisfies the injury in fact requirement."). Plaintiffs must generate, revise, and update written emergency action and fire prevention plans. *See* Galeazzi Decl. ¶¶ 18, 20. Both Plaintiffs and their members must train employees as OSHA requires. *Id.* ¶¶ 19, 22, 31. And both Plaintiffs and their members must regularly document their compliance with these safety standards in case they need to prove their compliance in response to an inspection. *Id.* ¶¶ 21, 32.

Third, Plaintiffs and their members are injured through compliance-related pocketbook injuries from the safety standards to which they are subject. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 261–62 (6th Cir. 2009) (holding that "the cost of compliance" with challenged federal requirements is "a cognizable injury in fact"). To comply with the five safety standards identified above, Plaintiffs and their members have spent, and continue to spend, money for trainings, for employees' time to attend trainings, for compliance documentation, to produce written plans, and must commit to having all medical care for employee injuries at one nearby hospital. Galeazzi Decl. ¶¶ 12, 21, 32.

Fourth, absent the legal obligation to comply with the standards, Plaintiffs and their members would not take the action the standards require. *Id.* ¶¶ 13, 22, 28, 31;

7

*See also Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019) (quoting *Contender Farms*, 779 F.3d at 266). Plaintiffs and their members are dedicated to employee safety. But they find OSHA's overbroad and one-size-fits-all safety standards unnecessary and burdensome. *See* Galeazzi Decl. ¶¶ 15, 23–28, 31–32. Despite taking measures that each employer believes appropriate to protect its workers, Plaintiffs and their members spend substantial money and employee time complying with OSHA standards every year. *See id.* ¶¶ 12, 21, 32. Each Plaintiff and its members must comply with OSHA regulations even if they are unnecessary for the employer's specific situation, duplicative of other safety measures the employer prefers, or more dangerous than alternative safety measures.

The declaratory and injunctive relief Plaintiffs seek would fully redress Plaintiffs' and their members' injuries. Simply put, without OSHA's overbroad regulations, they would not have to bear the costs or spend the time needed to comply.

## STANDARD OF REVIEW

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (same). The movant bears the initial burden of demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it has done so, the burden of production shifts to the non-movant, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Although "evidence is viewed in the light most favorable to the

nonmoving party," *Johnson v. Cooper T. Smith Stevedoring Co.*, 74 F.4th 268, 272 (5th Cir. 2023), "[s]ummary judgment may not be thwarted by conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

This case raises a facial challenge to Congress's unconstitutional delegation of legislative authority to OSHA through the safety standards delegation in § 655(b). And "a facial challenge to the constitutionality of a statute presents a pure question of law." *Ctr. for Indiv. Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006). Where "[t]he entire case on review is a question of law, and only a question of law," "early summary judgment motions are often appropriate." *AHA v. HHS*, Civil Action No. 18-2112, 2018 U.S. Dist. LEXIS 187624, at *7 (D.D.C. Nov. 2, 2018) (quoting *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).

A party seeking a permanent injunction must demonstrate: "(1) actual success on the merits; (2) that it is likely to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in that party's favor; and (4) that an injunction is in the public interest." *Crown Castle Fiber, L.L.C. v. City of Pasadena*, 76 F.4th 425, 441 (5th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 32 (2008)). "The final two injunction factors—balance of harms and the public interest—'merge when the Government is the opposing party.'" *Space Exploration Techs. Corp. v. NLRB*, 151 F.4th 761, 773 (5th Cir. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

9

ARGUMENT

## I.    The Constitution bars Congress from delegating legislative power.

Article I of the Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." Based on that grant, legislative power "belongs to the legislative branch, and to no other." *FCC v. Consumers' Rsch.*, 606 U.S. 656, 672 (2025) (citing *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001)).

"If there is a principle in our Constitution, indeed in any free Constitution, more sacred than another, it is that which separates the Legislative, Executive and Judicial powers." *Myers v. United States*, 272 U.S. 52, 116 (1926) (quoting 1 Annals of Congress 581 (1791) (James Madison)); *see also Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892) ("That [C]ongress cannot delegate legislative power to the president is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the [C]onstitution.").

As many newly elected congressional representatives have discovered, "[W]inning was easy, young man. Governing's harder." Lin-Manuel Miranda, *Cabinet Battle #1*, Hamilton: An American Musical (2015). The Framers, by design, made Congress the branch most responsive—and accountable—to the people's will. *Tiger Lily, LLC v. U.S. HUD*, 5 F.4th 666, 674 (6th Cir. 2021) (Thapar, J., concurring). That way, if Congress misused its power, or implemented policy choices the people disagreed with, "the people could respond, and respond swiftly." *Id.* Despite Congress's weighty responsibility, as James Madison argued to Congress in 1791, to "alienat[e] the powers of the House . . . would be a violation of the Constitution." *Tiger*

10

*Lily*, 5 F.4th at 674 (citing Ilan Wurman, *Nondelegation at the Founding*, 130 Yale L.J. 1490, 1506 (2021)). And yet Congress did exactly that through the OSH Act when it delegated to OSHA the power to write laws every employer must follow—a delegation of core legislative power without any meaningful constraints on its use and with only an unclear policy to guide that use.

> ### A.    Delegations have only been upheld when Congress provides an intelligible principle to limit executive branch discretion.

The Court has long held that Congress may not give away the legislative power to the executive. Although Congress may permit agencies to "fill up the details" of a statutory scheme under the nondelegation doctrine, *Wayman v. Southard*, 23 U.S. 1, 43 (1825), Congress may not abdicate the core of legislative power: the power to decide what is lawful, *see Panama Refin. Co. v. Ryan*, 293 U.S. 388, 418–19 (1935).

The Supreme Court calls this necessary constraint on executive discretion an "intelligible principle." *See generally* Chad Squitieri, *Towards Nondelegation Doctrines*, 86 Mo. L. Rev. 1239, 1245–48 (2022). Although "the Constitution does not speak of 'intelligible principles,'" since 1928, the courts rely on the intelligible principle test to determine what delegations are permissible. *Whitman*, 531 U.S. at 487 (Thomas, J., concurring); *accord J. W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 409 (1928). That is, "when Congress confers decisionmaking authority upon agencies Congress must 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform.'" *Whitman*, 531 U.S. at 472 (quoting *J. W. Hampton, Jr., & Co.*, 276 U.S. at 409).

An intelligible principle requires that "Congress has made clear both 'the general policy' that the agency must pursue and 'the boundaries of [its] delegated authority.'" *Consumers' Rsch.*, 606 U.S. at 673 (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)). Congress must either (1) require an explicit judicially reviewable factual finding by the Executive Branch or (2) set up an intelligible reviewable standard that would limit the scope of the Executive Branch's discretion. *Panama Refin.*, 293 U.S. at 415; *see also A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 530 (1935). Absent sufficient guidance and constraints in these forms, Congress has done what it may not do: "abdicate, or [] transfer to others, the essential legislative functions with which it is thus vested." *Panama Refin.*, 293 U.S. at 421.

Further, "the degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred." *Whitman*, 531 U.S. at 475; *Consumers' Rsch.*, 606 U.S. at 673 (citing *Am. Power & Light Co.*, 329 U.S. at 105). So the power to address a narrow, technical issue like "the definition of 'country [grain] elevators'" requires less guidance than "when an agency action will 'affect the entire national economy.'" *Consumers' Rsch.*, 606 U.S. at 673 (quoting *Whitman*, 531 U.S. at 475). Critically, Congress must provide sufficient standards "to enable both 'the courts and the public [to] ascertain whether the agency' has followed the law." *Id.* (quoting *Opp Cotton Mills, Inc. v. Adm'r of Wage and Hour Div., Dep't of Labor*, 312 U.S. 126, 144 (1941)).

For example, in *Panama Refining Co.*, 293 U.S. 388, the Court enjoined § 9(c) of the National Industrial Recovery Act. That statute authorized the President to prohibit interstate transportation of petroleum produced beyond state quotas. *Id.* at 405. The Court "look[ed] to the statute to see whether the Congress has declared a policy . . . ; whether the Congress has set up a standard . . . ; whether the Congress has required any finding by the President . . . ." *Id.* at 415. It found that the statute contained a "general outline of policy," but that it "contains nothing as to the circumstances or conditions in which transportation of petroleum or petroleum products should be prohibited." *Id.* at 417. As the Court explained, "this broad outline is simply an introduction of the Act, leaving the legislative policy" to be defined elsewhere. *Id.* at 418. Finally, "[t]he Congress did not declare in what circumstances th[e] transportation [of oil] should be forbidden, or require the President to make any determination as to any facts or circumstances [before forbidding it]." *Id.* In short, after examining § 9 and the full context of the Act, the Court determined that "[t]he Congress left the matter to the President without standard or rule, to be dealt with as he pleased." *Id.* These deficiencies left the statute lacking "any limitation of the grant of authority in § 9 (c)" and rendered it unconstitutional. *Id.* at 420.

The Court again relied on the nondelegation doctrine when it held in *Schechter Poultry* that Congress abdicated its legislative power. *See* 295 U.S. at 539. The statute at issue there delegated to the President the authority to impose "codes of fair competition" after making formal findings that the industry-proposed codes would not "promote monopolies" and that the organizations proposing such codes were

"truly representative" of the affected trade or industry. *Id.* at 522–23; *see also id.* at 534 ("[T]he approval of a code by the President is conditioned on his finding that it 'will tend to effectuate the policy of this title.'"). Citing Article I, §§ 1 and 8, the Court stated: "The Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested." *Id.* at 529. The statute was unconstitutional because it provided "no standards" guiding the discretion of the Executive Branch, "aside from the statement of the general aims . . . in section one." *Id.* at 541. Because the President's power to prescribe codes was "virtually unfettered," "the code-making authority thus conferred is an unconstitutional delegation of legislative power." *Id.* at 542. The toothless requirements in the fair competition codes delegation were not enough.

Both *Schechter Poultry* and *Panama Refining* remain binding precedent. *See Allstates Refractory Contrs., LLC v. Su*, 79 F.4th 755, 774 (6th Cir. 2023) (Nalbandian, J., dissenting).

### B. Recent Supreme Court precedent shows that the nondelegation doctrine is alive and well.

Just this year in *Consumers' Research*, the Court reaffirmed that legislative power "belongs to the legislative branch and no other." 606 U.S. at 671 (citing *Whitman*, 531 U.S. at 472). Employing "the usual intelligible-principle test," the Court upheld a delegation in the Universal Service Program, which subsidizes telecom services through a tax on telecommunications companies. *Id.* at 680. When collecting funds, Congress instructed the FCC to collect only the amount that was "sufficient." *Id.* at 681. That term, while seemingly vague when viewed outside the

larger statutory scheme, was a proper delegation because Congress "imposed ascertainable and meaningful guideposts for the FCC to follow when carrying out its delegated function of collecting and spending contributions from carriers." *Id.* at 681. Congress sufficiently grounded the statute in a general policy, *id.* at 667–68, and set standards for achieving the policy's goals. And it did so in ways that contrast sharply with the safety standards delegation.

> **1.    Unlike the safety standards delegation, the universal services program provides a clear policy the FCC must pursue.**

The universal services program provides Congress's clear policy: the FCC was to collect contributions from telecommunications companies and use that money to "subsidize basic communications services for consumers in certain underserved communities—particularly, rural and low-income areas." *Id.* at 663–64, 668. Congress set forth six principles for the FCC to base its policies on. *Id.* at 667–68. But a policy alone is not enough—the statutes in both *Schechter Poultry* and *Panama Refining* had policy statements. *See Schechter Poultry*, 295 U.S. at 522; *Panama Refin.*, 293 U.S. at 416–17. Rather, the statute must, through either standard-setting or required findings, provide meaningful guidance that cabins the agency's discretion. *See Consumers' Rsch.*, 606 U.S. at 673.

> **2.    Unlike the safety standards delegation, the universal services program provides specific statutory boundaries on the FCC's authority.**

The Court determined that the universal service program cabined the FCC's authority in two ways, both of which provide instruction here.

First, Congress set boundaries on the FCC's discretion as to how much it could fundraise via its taxing power. The Court broke this question down into two components: how much money the FCC may raise, and what it may spend it on. *Id.* at 680–81. As to what it may spend the funds on, the statute specified (1) who the program should serve; (2) what services it may provide; (3) what services it may not provide; and (4) that the services provided must be "essential to education, public health, or public safety." *Id.* at 684–85. That is, Congress told the FCC what to provide, where, and to whom. *Id.* at 685. These "clear [] parameters" also determine how much money the FCC may raise. *Id.* at 687. Under the statute, the FCC may raise no more and no less money than necessary. *Id.* at 681 (explaining that "the word 'sufficient' sets a floor and ceiling alike").

Second, Congress required the FCC to assess whether it met an objective criterion before it could act. The FCC must determine that a "service has 'been subscribed to by a substantial majority of residential customers'" before it may subsidize that service. *Id.* at 684 (quoting 47 U.S.C. § 254(c)(1)(B)). Objective measures like this are critical, as they ensure that "both 'the courts and the public [can] ascertain whether the agency' has followed the law." *Id.* at 673 (quoting *Opp Cotton Mills*, 312 U.S. at 144). In addition to finding the primary requirements of the intelligible principle test met—Congress provided the agency a general policy and set clear boundaries by providing standards for its discretion and required factual findings before the FCC acts—the Court's conclusion was bolstered by two additional considerations: the scope of the delegated power and what the FCC had *actually done*

16

with the power. *Id.* at 686. The scope of power delegated to the FCC was not as minor as defining "country grain elevators," but neither was the FCC granted a stranglehold on the entire national economy. *Cf. id.* at 705 (highlighting the scope of the delegated power) (Kavanaugh, J., concurring). Additionally, the majority recounted how the FCC had consistently hewed close to Congress's instructions. *Id.* at 686 ("The proof is in the pudding."). The FCC had always viewed its power as constrained and had acted accordingly, bolstering the conclusion that the delegation was, in fact, permissible. *Id.* The Court looked for an agency grounded squarely in law written by Congress, not by the agency itself, and it found it.

The OSH Act could not be more different.

## II.    OSHA's safety standards authority lacks an intelligible principle.

The OSH Act's safety standards delegation fails under the same framework the Court just used for the FCC's universal services program. Congress gave OSHA only the barest of policy statements, set no meaningful standards for it to follow, and required hardly any findings before it can act. Congress intended to—and did—grant OSHA immense, unrivaled power over every employer in the country. And, to decorate the cake, OSHA has actually used this authority to its fullest extent to micromanage every business in the United States.

Congress's declared policy is that OSHA is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). To serve that broad policy goal, OSHA was granted power to issue "any occupational safety and health standard." 29 U.S.C. § 655(b). All OSHA must find to serve this nebulous goal is that the proposed

standard is "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). OSHA may revoke safety standards on the same basis, should it change its mind. 29 U.S.C. § 655(b). OSHA's safety standards carry hefty fines and potential prison sentences, *see* 29 U.S.C. § 666, and cover nearly the entire national economy: they apply to any "person engaged in a business affecting commerce who has employees," 29 U.S.C. § 654(a)(2).

## A. The OSH Act's vague policy statements provide little guidance to the agency.

Congress provided the bare minimum in general policy to OSHA, but the policy it provided is vague and does little to constrain OSHA. Congress's declaration that OSHA is supposed "to assure so far as possible . . . safe and healthful working conditions and to preserve our human resources" provides little stability to guide OSHA's work. 29 U.S.C. § 651(b). It is akin to the policies in *Schechter Poultry* and *Panama Refining*: "to remove obstructions to the free flow of interstate and foreign commerce . . . ." *See* 295 U.S. at 531 n.9; 293 U.S. at 418. Both goals are lofty and uncertain. In *Panama Refining*, the Court made clear that the general policy statement given did nothing to "declare[] and define[]" the "legislative policy" handed down by Congress, and so did nothing to provide a proper delegation. 293 U.S. at 418. Not so in *Consumers' Research*, where the FCC was instructed to "make available . . . a rapid, efficient, nationwide, and world-wide wire and radio communication service with adequate facilities at reasonable charges." 47 U.S.C. § 151. OSHA's delegation contains the bare minimum required policy statement by Congress, but it certainly contains nothing more, which weighs in favor of holding the delegation invalid.

18

**B.    Unlike in *Consumers' Research*, Congress set no statutory boundaries for OSHA in the safety standards delegation.**

Although this vague policy statement barely manages to announce a policy, Congress failed to provide any boundaries for OSHA's action by setting standards or requiring findings.

**1.    Congress did not limit OSHA's authority to issue safety standards.**

The Act only requires that OSHA adopt "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). That lone definition is the "only evident source of constraint" on the Secretary's authority to issue safety standards. *Int'l Union, UAW v. OSHA*, 938 F.2d 1310, 1316 (1991). But just about anything would meet that definition.

The safety standards delegation lacks a standard that is "sufficiently definite and precise" to guide OSHA's discretion. *Yakus v. United States*, 321 U.S. 414, 426 (1944); *see Schechter Poultry*, 295 U.S. at 541–42. The safety standards delegation specifies nothing that OSHA "must conform to" or any "criterion" to guide it. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 397–98 (1940). It contains no factors. *Mistretta v. United States*, 488 U.S. 361, 375 (1989). The safety standards do not even require OSHA "to act at all" because it is couched in an optional "may." *Gundy v. United States*, 588 U.S. 128, 151 (2019) (Gorsuch, J., dissenting); *see* 29 U.S.C. § 655(b) (using the permissive "may" rather than mandatory "shall"); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 112 (2012) ("The

traditional, commonly repeated rule is that shall is mandatory and may is permissive[.]"). Nothing whatsoever in this delegation constrains OSHA.

Take the Tractor Rule as one illustration. *See* 29 C.F.R. § 1928.51, appx. A (Tractor Rule). It requires annual training on how to operate a tractor. Certainly, the safety standards delegation authorizes this rule because it is "reasonably necessary or appropriate to provide safe or healthful employment and places of employment," 29 U.S.C. § 652(8), to require employers train employees to set brakes "securely" when the tractor is stopped. 29 C.F.R. § 1928.51.9. But OSHA could do anything with respect to requiring training on tractor safety, including nothing "at all" and it would still be authorized under § 652(8). *See Gundy*, 588 U.S. at 151 (Gorsuch, J., dissenting). If OSHA required this training daily or once a decade, it would still be "appropriate," if not "reasonably necessary." But it would also be appropriate or reasonably necessary for OSHA to require employees to be trained once, or not at all. Under any of these scenarios, it is impossible to determine whether the will of Congress has been obeyed. *Yakus*, 321 U.S. at 414. This unfettered discretion allows OSHA to freely exercise its own policy judgment independent of Congress.

Courts and scholars agree that Congress's grant of authority to OSHA to issue safety standards is sweeping. *See Allstates Refractory Contrs., LLC v. Su*, 144 S. Ct. 2490, 2490–91 (2024) ("If this far-reaching grant of authority does not impermissibly confer legislative power on an agency, it is hard to imagine what would.") (Thomas, J., dissenting from denial of certiorari); *Int'l Union*, 938 F.2d at 1316 (describing the definitional language as "exceedingly vague"); *Benzene*, 448 U.S. at 646 (explaining

that without further substantive limitations, "the statute would make such a 'sweeping delegation of legislative power' that it might be unconstitutional" under *Schechter Poultry* and *Panama Refining*); *Allstates Refractory*, 79 F.4th at 781 (describing the Secretary's power under the Act as "virtually unfettered") (Nalbandian, J., dissenting); Cass Sunstein, *Is OSHA Unconstitutional?*, 94 Va. L. Rev. 1407, 1448 (2008) ("No other federal regulatory statute confers so much discretion on federal administrators, at least in any area with such broad scope, and it is not difficult to distinguish OSHA from statutes that the Court has upheld.").

It is easy to see why they agree.

### 2. Congress does not require OSHA to make any findings before using its authority.

Having given neither clear policy guidance nor meaningful standards, Congress compounded its error by not requiring any findings before OSHA's use of the delegated power. OSHA's safety standards delegation does not turn on it reaching certain meaningful conclusions or making relevant findings of fact before it can wield its authority. *See* 29 U.S.C. § 652(8); *see Opp Cotton Mills,* 312 U.S. at 144 (upholding delegation that allowed the Executive to set minimum wages contingent on "basic facts" and listing "prerequisites"); *Radio Corp of Am. v. United States*, 341 U.S. 412, 416 & n.5 (1951) (upholding delegation allowing commission to set standards for color television "given a justifiable fact situation"). Nowhere in the OSH Act does Congress require OSHA to find facts or OSHA's assessment that a particular event has occurred prior to the promulgation of a general safety standard. *Cf. Consumers' Rsch.*,

606 U.S. at 684 (explaining that the FCC must assess whether "objective criterion" are met).

Congress's use of the disjunctive, "or," in the phrase, "reasonably necessary *or* appropriate" exacerbates the freewheeling nature of this delegation. 29 U.S.C. § 652(8) (emphasis added); *see* Scalia & Garner, Reading Law at 116. These are notably expansive terms. *See* Cass R. Sunstein, *Is OSHA Unconstitutional?*, 94 Va. L. Rev. 1407, 1431 (2008) (explaining that the phrase "seems to allow (but not require) the agency to use some form of cost-benefit analysis as a rule of decision"). "Appropriate" is a term that *definitionally allows* for "open-ended" decisionmaking. *Tanzin v. Tanvir*, 592 U.S. 43, 49 (2020). And the context here makes it impossible to determine what "appropriate" refers to. It could mean anything. The use of disjunctive language to join two *already* broad terms further renders it impossible for anyone to "ascertain whether [OSHA] . . . has conformed to those standards." *See Yakus*, 321 U.S. at 426; *Opp Cotton Mills*, 312 U.S. at 144.

Also, OSHA is not just making technical or objective determinations based on its own agency expertise. Rather, its rulemaking requires value judgments, tradeoffs, and balancing of social costs. OSHA alone decides the acceptable level and degree of risk in the workplace. OSHA decides the economic cost—in terms of compliance costs, lost productivity, increased overhead, and even job losses—that industries must bear, all without any meaningful guidance. OSHA has "free rein to write the rules for virtually" all the nation's employers. *See Gundy,* 588 U.S. at 151 (Gorsuch, J., dissenting). That is unlike any delegation that has ever been upheld.

### C.    Congress's failure to provide OSHA an intelligible principle for safety standards violates the Constitution's separation of powers.

This delegation of policymaking authority was surely intentional. As Justice Rehnquist explained in the *Benzene* case: "It is difficult to imagine a more obvious example of Congress simply avoiding a choice which was both fundamental for purposes of the statute and yet politically so divisive that the necessary decision or compromise was difficult, if not impossible, to hammer out in the legislative forge." 448 U.S. at 687 (Rehnquist, J., concurring). Deciding what safety standards are "reasonably necessary or appropriate" necessarily involves "balancing statistical lives and industrial resources"—that is, making hard policy choices. *Id.* at 685. But Congress's shirking of its responsibility here upends the Constitution's precise balancing of powers between the branches of government.

In *Consumers' Research*, Congress provided the FCC detailed instructions: collect a precise amount of money, collect it from precisely these people, spend it on precisely these services, and provide the services to precisely these groups of people. 606 U.S. at 681, 684. Not so here. OSHA may as well have been told to "go forth and do good." *Id.* at 741 (Gorsuch, J., dissenting).

Further, Congress intended to give OSHA the power to "affect the entire national economy." *See id.* (quoting *Whitman*, 531 U.S. at 475). That places the need for clarity at its apex. *See id.* Congress has given OSHA the power to dictate workplace safety standards to nearly every employer in the United States. The scope of that delegation requires a *more* precise intelligible principle. But Congress provided no principle at all. It is hard to imagine a more consequential delegation of

legislative power. That scope weighs heavily against holding the safety standards authority a valid delegation.

### D. OSHA has used its improperly delegated authority broadly.

OSHA's use of the power is the icing on the cake—just like with the FCC, "[t]he proof is in the pudding." *Id.* at 686. The *Consumers' Research* Court reviewed the FCC's use of its granted discretion to see if Congress had provided it with clear guidelines and constraints. *Id.* A similar review of OSHA's use of its delegated authority shows that Congress failed to provide it with clear guidelines and meaningful constraints. *Cf. id.*

OSHA regulates everything. Its safety standards cover matters from permissible distance between ladder rungs and stepstool steps, 29 C.F.R. § 1910.23(b), to personal protective equipment requirements, *id.* § 1910.132, to how often an employer must train employees on proper tractor seatbelt use, *id.* § 1928.51(d), to training on the hazards of falling, *id.* § 1926.503, to what kinds of accident prevention signs and symbols are allowed, *id.* §§ 1910.145, 1926.200. And it covers every industry, from agricultural operations, *id.* § 1928, to paper mills, *id.* § 1910.261, to laundromats, *id.* § 1910.264, to commercial diving operations, *id.* § 1910.401. Strewn throughout the thousands of pages OSHA has issued is a dizzying array of rules covering nearly everything that could happen—or not happen—in a workplace. OSHA's phenomenally broad use of the power is a telltale sign that the delegation itself is unconstitutional.

### E.    Neither OSHA nor the courts should read an absent intelligible principle into the Act.

#### 1.    OSHA cannot cure the nondelegation problem by curbing its own authority.

In the past, OSHA has attempted to voluntarily relinquish some of the broad discretion granted by the OSH Act to try to supply a missing intelligible principle. For example, OSHA previously self-imposed requirements that safety standards must address a "significant risk," and must be both economically and technologically feasible. *Int'l Union*, 938 F.2d at 1317; *see Cotton Dust*, 452 U.S. at 513 n.31.

But the Supreme Court has foreclosed the possibility "that an agency can cure an unlawful delegation of legislative power by adopting in its discretion a limiting construction of the statute." *Whitman*, 531 U.S. at 472. As the *Whitman* Court explained, "[t]he idea that an agency can cure an unconstitutionally standardless delegation of power by declining to exercise some of that power seems to us internally contradictory." *Id.* at 473. Rather, it is up to the court to decide "[w]hether the statute delegates legislative power" to an agency, "and an agency's voluntary self-denial has no bearing upon the answer." *Id.*

#### 2.    Courts may also not rewrite the statute to provide a missing intelligible principle.

Recently, the Sixth Circuit attempted to cure the Act's overly broad delegation of legislative power by reading these same two self-created limitations into the Act's text. *Allstates Refractory*, 79 F.4th at 765. Without pointing to specific statutory text supporting these requirements, the Sixth Circuit found that "the 'feasibility' and 'significant risk' constructions are '*rooted*' in the language of the Act," not an "agency-

25

imposed limitation." *Id.* (emphasis added). The court held that OSHA's "standards must still be reasonably needed—that is, not more or less stringent than is needed to respond to, but not eliminate, a safety risk in the workplace." *Id.* at 766 (citing *Mistretta*, 488 U.S. at 377; *Whitman*, 531 U.S. at 472–76).

At best, that reading ignores the "or appropriate" part of the definition of standards in § 652(8). As pointed out above, the disjunctive "or" in the definition allows OSHA to issue standards that are reasonably necessary and standards that are "appropriate." But standards need not be both. *Allstates Refractory*, 79 F.4th at 783 (Nalbandian, J., dissenting). And by limiting OSHA only to "appropriate" standards, Congress imposed no limit at all. *Id.* at 784 ("The term, working in tandem with the permanent standards provision, does not seem to require anything but the Secretary asking: 'What seems appropriate in workplaces around the nation?'"). Instead, it amounts to "little more than instruction to go forth and do good." *Consumers' Rsch.*, 606 U.S. at 743 (Gorsuch, J., dissenting).

Beyond ignoring the disjunctive, the Sixth Circuit appears to have invented the "not more or less stringent" reading of the phrase "reasonably necessary." *See Allstates Refractory*, 79 F.4th at 766. That language is absent from the text. But more importantly, it provides no meaningful anchor to any concrete policy objective. In contrast, in *Consumers' Research*, the Court read "sufficient" in the limited context of the FCC's universal service program funding requirement. 606 U.S. at 681–82. The Court held that "sufficient" in terms of funding for the program "sets a floor and ceiling alike." *Id.* at 681. In other words, "sufficient" was anchored to the amount of

money needed for the program. The OSH Act has no such anchor connecting to the term "reasonably necessary."

The Sixth Circuit's effort to save the Act rewrote the statute and distorted ordinary language. *See, e.g.*, *Allstates Refractory*, 79 F.4th at 764–65 (holding that the "may" in OSHA's delegation is "obligatory," not "discretionary"). And "it's not [the courts'] job to rewrite statutes—it's Congress's." *Beras v. Johnson*, 978 F.3d 246, 264 (5th Cir. 2020) (citing *McCarthan v. Dir. of Goodwill Indus.-Suncoast*, 851 F.3d 1076, 1090 (11th Cir. 2017)); *see also* Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 533 (1947) ("A judge must not rewrite a statute, neither to enlarge nor to contract it."); *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 130 (2106) ("[O]ur constitutional structure does not permit this Court to 'rewrite the statute that Congress has enacted.'" (quoting *Dodd v. United States*, 545 U.S. 353, 359 (2005))); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019) ("[W]e may not rewrite the statute simply to accommodate [a] policy concern."). Finding an intelligible principle in the Act requires rewriting it to include limitations on OSHA's authority that are not there.

## III. If the safety standards delegation is held to contain an intelligible principle, then the Supreme Court should revisit the intelligible principle test.

If OSHA's mandate to promulgate "reasonably necessary or appropriate" safety standards for almost every employer in the country meets the intelligible principle test, then the test is meaningless and the Supreme Court should revisit it. As Justice Alito has asserted, "We should return to the original meaning of the Constitution: The Government may create generally applicable rules of private

conduct only through the proper exercise of legislative power." *DOT v. Ass'n of Am. R.R.*, 575 U.S. 43, 86 (2015) (Alito, J., concurring). That is, Congress—and only Congress—must legislate. Congress—and only Congress—must make policy judgments. *See Ass'n of Am. R.R.*, 575 U.S. at 86 ("To understand the 'intelligible principle' test as permitting Congress to delegate policy judgment in this context is to divorce that test from its history.") (Thomas, J., concurring). Allowing Congress to delegate policymaking legislative authority undermines the Constitution's carefully crafted separation of powers and the accountability to the sovereign people it guarantees.

## IV. Plaintiffs are entitled to declaratory and injunctive relief based on the invalid delegation of legislative power to OSHA.

Because OSHA's authority to promulgate and enforce general permanent safety standards under 29 U.S.C. § 655(b) is unconstitutional, the Court should enter a declaratory judgment and grant a permanent injunction.

### A. Declaratory relief is appropriate to remedy constitutional violations.

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). And "the Declaratory Judgment Act provides a *remedy* different from an injunction." *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001) (en banc). The Court should grant that remedy to Plaintiffs.

The *Free Enterprise Fund* plaintiffs faced a harm remarkably similar to the harm Plaintiffs face here. Both groups of plaintiffs are subject to government action

by executive officials wielding unconstitutional power. *See Free Enter. Fund*, 561 U.S. at 485. There, the Public Company Accounting Oversight Board (PCAOB); here, the Secretary of Labor and OSHA. In *Free Enterprise Fund*, the plaintiffs were accounting firms subject to the PCAOB's regulations and decisions governing accounting. *See id.* at 488. Here, Plaintiffs are entities subject to OSHA's regulations and decisions governing all workplaces. Both groups have a right to ensure that the regulations and decisions that affect them are issued by agencies acting in accordance with the Constitution. *Id.* at 513. In sum, "[i]f the constitutional structure of our Government that protects individual liberty is compromised, individuals who suffer otherwise justiciable injury may object." *Bond v. United States*, 564 U.S. 211, 223 (2011). And the Declaratory Judgment Act provides an appropriate remedy for Plaintiffs' constitutional challenge here. The Court should, therefore, declare that the OSH Act's safety standards delegation, 29 U.S.C. § 655(b), and regulations promulgated under it, are unconstitutional delegations of legislative power barred by Article I of the United States Constitution.

**B.      Injunctive relief barring further enforcement of OSHA's unconstitutional regulations is also appropriate.**

The Court should also issue an injunction barring the government from enforcing any general safety standards issued under 29 U.S.C. § 655(b) and from imposing statutory penalties for failure to obey those safety standards.

Plaintiffs satisfy the first factor because their claim succeeds on the merits— the Constitution bars Congress from improperly delegating legislative authority to OSHA. This factor is "the most important," and so weighs heavily in favor of granting

an injunction here. *See Space Exploration Techs. Corp. v. NLRB*, 151 F.4th 761, 772 (5th Cir. 2025).

Plaintiffs also meet the second factor. Compelling Plaintiffs to comply with unconstitutionally issued regulations is irreparable harm. *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("[T]he loss of constitutional freedoms 'for even minimal periods of time . . . unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, 741 F. Supp. 3d 515, 525 (N.D. Tex. 2024) (noting that "the potential to infringe on constitutional rights" is "per se irreparable injury"); *Tex. Top Cop Shop, Inc. v. Garland*, 758 F. Supp. 3d 607, 636 (E.D. Tex. 2024) ("[I]f Plaintiffs must comply with an unconstitutional law, the bell [of irreparable harm] has been rung."). Plaintiffs also have the irreparable harm of their ongoing compliance costs because they have no remedy for that monetary injury. *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1143 (5th Cir. 2021). Sovereign immunity precludes their recovery. *See id.*; 5 U.S.C. § 702 (precluding APA suits for monetary damages).

Plaintiffs meet the final factors, which "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. The public is harmed by "the perpetuation of unlawful agency action." *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (quotation omitted). Without relief, Plaintiffs will incur substantial, unrecoverable monetary costs and thus constitutional harm in complying with OSHA's unconstitutional regulations. Conversely, "neither [the government] nor the public has any interest in enforcing a regulation that violates federal law." *Book People, Inc.*

*v. Wong*, 81 F.4th 318, 341 (5th Cir. 2024) (quoting *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 252 (5th Cir. 2023), *rev'd and remanded on other grounds*, 602 U.S. 367 (2024)). Similarly, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Louisiana v. Biden*, 55 F.4th at 1035 (quoting *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021)). And the public interest is "served by maintaining our constitutional structure." *See BST Holdings*, 17 F.4th at 618–19.

CONCLUSION

Because Congress's delegation of legislative authority to OSHA through the Secretary of Labor violates Article I, section 1 of the Constitution, Plaintiffs request that this Court grant summary judgment, declare null all permanent safety regulations issued under 29 U.S.C. § 655(b), and permanently enjoin OSHA from enforcing those safety regulations.

Date:  December 3, 2025        Respectfully submitted,

/s/ Benjamin I. B. Isgur
Benjamin I. B. Isgur
  Virginia Bar No. 98812
James V. F. Dickey
  Minnesota Bar No. 393613
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Suite 104
Roswell, GA 30075
Tel.: (770) 977-2131
bisgur@southeasternlegal.org
jdickey@southeasternlegal.org

Robert Henneke
  Texas Bar No. 24046058
Chance Weldon
  Texas Bar No. 24076767
Matthew Chiarizio
  Texas Bar No. 24087294

TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Phone: (512) 472-2700
Fax: (512) 472-2728
rhenneke@texaspolicy.com
cweldon@texaspolicy.com
mchiarizio@texaspolicy.com