UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

|  |  |
|---|---|
| TEXAS INTERNATIONAL PRODUCE ASSOCIATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, et al.,<br><br>Defendants. | No. 2:25-cv-261-Z |

**UNOPPOSED MOTION OF PUBLIC CITIZEN
FOR LEAVE TO FILE A BRIEF AS AMICUS CURIAE
IN SUPPORT OF DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Public Citizen respectfully moves for leave to file the accompanying brief as amicus curiae in support of Defendants' cross-motion for summary judgment and opposition to Plaintiffs' motion for summary judgment. Pursuant to Local Rule 7.1(a), undersigned counsel has conferred with counsel for all parties, and no party opposes this motion.

On December 3, 2025, Plaintiffs moved for summary judgment on their claim that Congress's grant of authority in 29 U.S.C. § 655(b) to Defendant Occupational Safety and Health Administration (OSHA) to promulgate occupational safety and health standards is an unconstitutional delegation of legislative power. ECF 3 at 2. Plaintiffs ask this Court to declare this statutory grant unlawful and to enjoin Defendants from implementing it. *Id.* On March 23,

2026, Defendants opposed Plaintiffs' motion for summary judgment and filed a cross-motion for summary judgment. ECF 23.[1]

Movant Public Citizen has a strong interest in upholding OSHA's authority to protect the working population by promulgating occupational safety and health standards. Public Citizen, a nonprofit consumer advocacy organization with members in all fifty states, works for enactment and enforcement of laws and regulations that protect workers, consumers, and the public. To advance that objective, Public Citizen has petitioned OSHA to adopt or strengthen safety and health regulations under the Occupational Safety and Health Act of 1970. *See*, *e.g.*, Petition to OSHA for a Heat Standard (July 17, 2018);[2] Petition to Reduce Medical Resident Work Hours (Sept. 2, 2010).[3] And Public Citizen has successfully sued OSHA to compel it to carry out its statutory duty to issue standards when it finds that workplace conditions pose a significant risk to worker safety or health. *See*, *e.g.*, *Public Citizen Health Research Grp. v. Chao*, 314 F.3d 143 (3d Cir. 2002). Public Citizen also has a longstanding interest in constitutional separation-of-powers issues and in defending Congress's prerogative to confer authority on expert agencies to craft regulations that serve the public. Public Citizen thus often participates as amicus curiae in cases that present nondelegation challenges to statutes that empower agencies to flexibly implement congressional directives. *See, e.g.*, *FCC v. Consumers' Research*, 606 U.S. 656 (2025); *SEC v. Jarkesy*, 603 U.S. 109 (2024); *Allstates Refractory Contractors, LLC v. Su*, 79 F.4th 755 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2490 (2024).

---

[1] Defendants also moved to dismiss based on various threshold grounds. The proposed amicus brief takes no position on the motion to dismiss.

[2] https://www.citizen.org/wp-content/uploads/2439.pdf.

[3] https://www.citizen.org/wp-content/uploads/1917.pdf.

This Court has discretion to grant leave to file an amicus brief. *See* N.D. Tex. R. 7.2(b). As the Court has acknowledged, the filing of an amicus brief offers an "effective[] and … expeditious[]" means for a third party to contribute to a case in which it holds an interest. *Purl v. HHS*, 349 F.R.D. 526, 534 (N.D. Tex. 2025) (quoting *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (per curiam)). "Factors relevant to the determination of whether amicus briefing should be allowed include whether the proffered information is 'timely and useful.'" *United States ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 927 (S.D. Tex. 2007) (quoting *Waste Mgmt. of Pa. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995)); *see Tenn. Walking Horse Nat'l Celebration Ass'n v. U.S. Dep't of Agric.*, 2025 WL 747855, at *3 (N.D. Tex. Jan. 13, 2025) (inviting a motion for leave to file an amicus brief and observing that this Court has previously granted such leave where appropriate).

Public Citizen's proposed amicus brief explains why Plaintiffs' constitutional arguments are inconsistent with the Supreme Court's nondelegation precedents and how those arguments fail to appreciate the meaningful constraints that limit OSHA's discretion in promulgating occupational safety and health standards under the challenged statutory provision. Public Citizen submits that the arguments set out in the proposed amicus brief, which is attached to this motion, will be useful to the Court in resolving the pending cross-motions for summary judgment. The brief is also timely, as it is submitted two days after Defendants' cross-motion for summary judgment and opposition to Plaintiffs' motion for summary judgment, and twenty-six days prior to the due date for Plaintiffs' reply in support of their motion for summary judgment and opposition to Defendants' cross-motion. Finally, no party opposes the filing of the proposed amicus brief.

3

**CONCLUSION**

This Court should grant Public Citizen's motion for leave to file a brief as amicus curiae.

Dated: March 25, 2026

Respectfully submitted,

/s/ Jeremi Young
Jeremi Young, TX SBN 24013793
Young Firm, PC
301 South Polk Street, Suite 320
Amarillo, TX 79101
Phone: (806) 331-1800
Fax: (806) 398-9095
jyoung@youngfirm.com

Nicolas A. Sansone
(*pro hac vice* application pending)
D.C. Bar No. 1686810
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
Phone: (202) 588-1000
nsansone@citizen.org

*Counsel for Movant*
*Public Citizen*

4

UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

|  |  |
|---|---|
| TEXAS INTERNATIONAL PRODUCE ASSOCIATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, et al., <br><br> Defendants. | No. 2:25-cv-261-Z |

**[PROPOSED] AMICUS CURIAE BRIEF OF PUBLIC CITIZEN
IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

Jeremi Young, TX SBN 24013793
Young Firm, PC
301 South Polk Street, Suite 320
Amarillo, TX 79101
Phone: (806) 331-1800
Fax: (806) 398-9095
jyoung@youngfirm.com

Nicolas A. Sansone
(*pro hac vice* application pending)
D.C. Bar No. 1686810
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
Phone: (202) 588-1000
nsansone@citizen.org

*Counsel for Amicus Curiae Public Citizen*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

INTEREST OF AMICUS CURIAE ................................................................................... 1

SUMMARY OF ARGUMENT .......................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.      A statute that provides an intelligible principle to guide the executive in implementing
        congressional directives does not delegate legislative power. ............................................ 3

II.     The OSH Act supplies intelligible principles that sufficiently guide the executive in
        promulgating permanent safety regulations. ....................................................................... 6

III.    Accepting Plaintiffs' argument would contravene an entire body of settled law. ............. 15

CONCLUSION ................................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*A.L.A. Schechter Poultry Corp. v. United States*,
   295 U.S. 495 (1935)...................................................................................................... 17

*Alabama Power Co. v. Occupational Safety and Health Administration*,
   89 F.3d 740 (11th Cir. 1996) ......................................................................................... 9

*Allstates Refractory Contractors, LLC v. Su*,
   79 F.4th 755 (6th Cir. 2023) ................................................................................. 4, 6, 9

*American Federation of Labor & Congress of Industrial Organizations v. Brennan*,
   530 F.2d 109 (3d Cir. 1975)........................................................................................ 11

*American Power & Light Co. v. Securities and Exchange Commission*,
   329 U.S. 90 (1946)............................................................................................... 4, 5, 6

*American Textile Manufacturers Institute, Inc. v. Donovan*,
   452 U.S. 490 (1981)........................................................................................ 9, 10, 13

*Blocksom & Co. v. Marshall*,
   582 F.2d 1122 (7th Cir. 1978) ................................................................................. 6, 8

*Donovan v. Castle & Cooke Foods*,
   692 F.2d 641 (9th Cir. 1982) ......................................................................................... 9

*Federal Communications Commission v. Consumers' Research*,
   606 U.S. 656 (2025).......................................................................................... 4, 5, 16

*Federal Power Commission v. Hope Natural Gas Co.*,
   320 U.S. 591 (1944).................................................................................................... 16

*Forging Industry Association v. Secretary of Labor*,
   748 F.2d 210 (4th Cir. 1984) ...................................................................................... 11

*Gundy v. United States*,
   588 U.S. 128 (2019)............................................................................................. 5, 7, 12

*Industrial Union Department, AFL-CIO v. American Petroleum Institute*,
   448 U.S. 607 (1980)........................................................................................ 9, 10, 13, 15

*International Union, United Automobile, Aerospace, & Agricultural Implement Workers of
   America, UAW v. Occupational Safety and Health Administration*,
   938 F.2d 1310 (D.C. Cir. 1991).............................................................................. 9, 17

*J.W. Hampton, Jr., & Co. v. United States*,
   276 U.S. 394 (1928)......................................................................................... 3, 4, 16

ii

*Jennings v. Rodriguez,*
 583 U.S. 281 (2018)..................................................................................................... 15

*Martin v. Occupational Safety and Health Review Commission,*
 499 U.S. 144 (1991)....................................................................................................... 6

*Mistretta v. United States,*
 488 U.S. 361 (1989)........................................................................... 3, 4, 5, 12, 14, 15

*National Broadcasting Co. v. United States,*
 319 U.S. 190 (1943)................................................................................................. 7, 16

*National Cable Television Association v. United States,*
 415 U.S. 336 (1974)..................................................................................................... 15

*National Federation of Independent Business v. Department of Labor,*
 595 U.S. 109 (2022)..................................................................................................... 11

*National Grain & Feed Association v. Occupational Safety and Health Administration,*
 866 F.2d 717 (5th Cir. 1988) ...................................................................................... 10

*National Grain & Feed Association v. Occupational Safety and Health Administration,*
 903 F.2d 308 (5th Cir. 1990) ........................................................................... 9, 10, 13

*National Maritime Safety Association v. Occupational Safety and Health Administration,*
 649 F.3d 743 (D.C. Cir. 2011) ............................................................................ 6, 9, 11

*New York Central Securities Corp. v. United States,*
 287 U.S. 12 (1932)....................................................................................................... 16

*Panama Refining Co. v. Ryan,*
 293 U.S. 388 (1935).................................................................................................. 5, 17

*Sveen v. Melin,*
 584 U.S. 811 (2018)....................................................................................................... 8

*Tagg Brothers & Moorhead v. United States,*
 280 U.S. 420 (1930)..................................................................................................... 16

*Texas Independent Ginners Association v. Marshall,*
 630 F.2d 398 (5th Cir. 1980) ................................................................................. 10, 11

*Trinity Marine Nashville, Inc. v. Occupational Safety and Health Review Commission,*
 275 F.3d 423 (5th Cir. 2001) ...................................................................................... 11

*United Parcel Service of Ohio, Inc. v. Occupational Safety and Health Review Commission,*
 570 F.2d 806 (8th Cir. 1978) ........................................................................................ 9

*United States v. Edge Broadcasting Co.*,
   509 U.S. 418 (1993) ............................................................................................... 8

*United States v. Rock Royal Co-op*,
   307 U.S. 533 (1939) ............................................................................................. 12

*Whitman v. American Trucking Associations*,
   531 U.S. 457 (2001) ........................................................................... 4, 12, 16, 17

*Wilkerson v. Rahrer*,
   140 U.S. 545 (1891) ............................................................................................... 3

*Yakus v. United States*,
   321 U.S. 414 (1944) ............................................................................. 5, 6, 11, 16

**Statutes**

29 U.S.C. § 651(b) ...................................................................................................... 7

29 U.S.C. § 652(8) ................................................................................................. 6, 7, 8

29 U.S.C. § 652(9) ...................................................................................................... 7

29 U.S.C. § 652(10) .................................................................................................... 7

29 U.S.C. § 654(a)(1) .................................................................................................. 6

29 U.S.C. § 654(a)(2) .................................................................................................. 6

29 U.S.C. § 654(b) ...................................................................................................... 6

29 U.S.C. § 655(a) .................................................................................................. 7, 8

29 U.S.C. § 655(b) .................................................................................................. 2, 6

29 U.S.C. § 655(b)(8) .................................................................................................. 8

**Regulations**

29 C.F.R. § 1910.23 ................................................................................................... 14

29 C.F.R. § 1910.140 ................................................................................................. 14

29 C.F.R. § 1910.147 ................................................................................................. 14

**Constitutional Provisions**

U.S. Const. art. I, § 1 .................................................................................................. 3

U.S. Const. art. II, § 3 ............................................................................................................. 3, 4

**Other Authorities**

Cass R. Sunstein, *Is OSHA Unconstitutional?*, 94 Virginia Law Review 1407 (2008) ............... 14

## INTEREST OF AMICUS CURIAE[1]

Amicus curiae Public Citizen, a nonprofit consumer advocacy organization with members in all fifty states, works for enactment and enforcement of laws and regulations that protect workers, consumers, and the public. To advance that objective, Public Citizen has petitioned the Occupational Safety and Health Administration (OSHA) to adopt or strengthen safety and health regulations under the Occupational Safety and Health Act of 1970 (OSH Act). *See*, *e.g.*, Petition to OSHA for a Heat Standard (July 17, 2018);[2] Petition to Reduce Medical Resident Work Hours (Sept. 2, 2010).[3] And Public Citizen has successfully sued OSHA to compel it to carry out its statutory duty to issue standards when it finds that workplace conditions pose a significant risk to worker safety or health. *See*, *e.g.*, *Public Citizen Health Research Grp. v. Chao*, 314 F.3d 143 (3d Cir. 2002). Public Citizen also has a longstanding interest in constitutional separation-of-powers issues and in defending Congress's prerogative to confer authority on expert agencies to craft regulations that serve the public. Public Citizen thus often participates as amicus curiae in cases that present nondelegation challenges to statutes that empower agencies to flexibly implement congressional directives. *See, e.g.*, *FCC v. Consumers' Research*, 606 U.S. 656 (2025); *SEC v. Jarkesy*, 603 U.S. 109 (2024); *Allstates Refractory Contractors, LLC v. Su*, 79 F.4th 755 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2490 (2024).

## SUMMARY OF ARGUMENT

**I.** For nearly a century, the Supreme Court has consistently held that Congress may confer discretion on executive-branch agencies to implement broadly drawn legislative

---

[1] This brief was not authored in whole or part by counsel for a party, and no one other than amicus curiae or its counsel made a monetary contribution to the preparation or submission of the brief. Counsel for all parties have indicated that they do not oppose its filing.

[2] https://www.citizen.org/wp-content/uploads/2439.pdf.

[3] https://www.citizen.org/wp-content/uploads/1917.pdf.

directives, as long as Congress supplies an intelligible principle to guide executive action. The intelligible principle test evinces respect for Congress's judgment about how best to pursue its statutory aims, while enabling the judiciary to ensure that executive action stays within its proper realm. Although Plaintiffs contend that only the legislative branch can create legally binding rules that govern private action, the Supreme Court has long rejected that position as unworkable in practice and inconsistent with the flexibility that the Constitution confers on Congress.

**II.** The statutory provision that Plaintiffs challenge, 29 U.S.C. § 655(b), supplies intelligible principles that guide OSHA in promulgating workplace-safety standards. The provision directs OSHA to promulgate regulations that further workplace safety, with certain existing industry standards serving as a regulatory baseline. It requires that those regulations be feasible and reasonable, with costs roughly proportionate to their benefits, and it permits OSHA to issue new safety standards only upon finding a significant workplace-safety risk. These limitations adequately constrain executive discretion, and courts routinely enforce them.

Plaintiffs' contention that Congress must direct the granular content of workplace-safety standards lacks precedential support and demands an unrealistic degree of statutory precision. Further, constitutional avoidance requires this Court to reject Plaintiffs' facial challenge unless *no* permissible reading of the statute offers sufficient legislative guidance. A permissible reading that does so is easily available, as case law interpreting the statute makes clear.

**III.** Plaintiffs' view that section 655(b) unconstitutionally delegates legislative power is contrary to a long and consistent line of Supreme Court decisions approving comparably broad statutory mandates, including mandates that direct the executive to set air-quality standards that will "protect the public health," to regulate certain commercial activities in the "public interest," and to set "fair and equitable" price caps. Rather than distinguish these precedents, Plaintiffs

2

ignore them. Yet although Plaintiffs may disagree with the Supreme Court's nondelegation precedents, those precedents bind this Court and resolve this case.

## ARGUMENT

**I.    A statute that provides an intelligible principle to guide the executive in implementing congressional directives does not delegate legislative power.**

Article I of the U.S. Constitution provides that "[a]ll legislative Powers herein granted shall be vested in … Congress." U.S. Const. art. I, § 1. Article II then confers authority on the executive to "take Care that [Congress's] Laws be faithfully executed." U.S. Const. art. II, § 3. The Supreme Court has long and consistently recognized that these complementary provisions allow Congress to "use officers of the executive branch within defined limits, to secure the exact effect intended by its acts of legislation, by vesting discretion in such officers to make public regulations interpreting a statute and directing the details of its execution." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 406 (1928). Indeed, the Court has repeatedly observed that such arrangements are not only permissible but essential. *See*, *e.g.*, *Mistretta v. United States*, 488 U.S. 361, 372 (1989) ("[I]n our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives."); *J.W. Hampton*, 276 U.S. at 407–08 (explaining that Congress may direct the executive to set "just and reasonable" interstate-carrier rates because "[t]he rates to be fixed are myriad" and "[i]f Congress were to be required to fix every rate, it would be impossible to exercise the power at all").

Congress cannot, of course, "give[] up its legislative power and transfer[] it to the President" under the guise of a grant of discretion. *J.W. Hampton*, 276 U.S. at 406; *see Wilkerson v. Rahrer*, 140 U.S. 545, 561–62 (1891). But Congress does not abdicate its legislative role by writing "broad general directives," *Mistretta*, 488 U.S. at 372, that allow substantial leeway for

the executive to "exercise judgment on matters of policy" when it comes to implementation, *id.* at 378. As the Supreme Court has held, Congress fulfills its legislative function if it "clearly delineates the general policy, the public agency which is to apply it, and the boundaries" of the agency's "authority." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946).

The touchstone inquiry that has governed nondelegation challenges for nearly a century, then, is whether Congress has "la[id] down by legislative act an intelligible principle to which the person or body authorized" to execute the legislation "is directed to conform." *J.W. Hampton*, 276 U.S. at 409. As the Supreme Court reaffirmed just last Term, "[i]f Congress has done so," the judiciary should not "disturb its grant of authority." *FCC v. Consumers' Research*, 606 U.S. 656, 673 (2025). After all, an executive-branch agency that exercises even "significant discretion" in issuing regulations or orders to "carry[] out [Congress's] charge," *id.* at 691, exercises proper Article II *executive* power by "tak[ing] Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

The intelligible principle test evinces respect for the legislative, executive, and judicial branches' respective roles. By allowing Congress wide latitude to repose authority in executive bodies capable of responding flexibly to novel or unforeseen situations, the test guards against undue judicial interference with Congress's choice of how best to accomplish its legislative aims. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474–75 (2001) ("[W]e have 'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law.'" (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting))); *Allstates Refractory Contractors, LLC v. Su*, 79 F.4th 755, 760 (6th Cir. 2023) (describing the test as properly accommodating "Congress's need for flexibility"). Meanwhile, the requirement that Congress must supply an intelligible principle to guide executive discretion

4

enables judicial assessment of the executive's "application of [Congress's] policy in the light of [Congress's] legislative declarations" and ensures that courts can protect regulated parties by "safeguard[ing] against statutory or constitutional excesses." *Am. Power & Light*, 329 U.S. at 105–06; *see Yakus v. United States*, 321 U.S. 414, 426 (1944) (explaining that a statute creates a nondelegation problem only if "there is an absence of standards … so that it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed").

Although Plaintiffs maintain that the Constitution does not permit Congress to write statutes that leave room for the executive branch to engage in interstitial decision-making about "what is lawful," ECF 4 (Pls. Br.) at 11, binding precedent is squarely to the contrary. The Supreme Court has "over and over" upheld federal statutes that direct executive bodies to impose enforceable constraints on private conduct in pursuit of "even very broad" congressional aims. *Gundy v. United States*, 588 U.S. 128, 146 (2019) (plurality opinion); *see, e.g.*, *Am. Power & Light*, 329 U.S. at 104–06 (upholding statute enabling the executive to order dissolution of "unduly or unnecessarily complicate[d]" corporate structures); *Yakus*, 321 U.S. at 426–27 (upholding statute directing the executive to set "fair and equitable" commodity-price caps enforceable by criminal sanction); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 428–29 (1935) (observing that the executive may promulgate "binding rules of conduct" if they fall "within the framework of the policy which the Legislature has sufficiently defined"). What matters for constitutional purposes, in the end, is not whether a statute empowers an agency to promulgate regulations that bind private parties, but "whether Congress has made clear both 'the general policy' that the agency must pursue and 'the boundaries of [its] delegated authority.'" *Consumers' Research*, 606 U.S. at 673 (alteration in original; quoting *Am. Power & Light*, 329 U.S. at 105). And unless a statute presents one of those "rare[]" cases, *Mistretta*, 488 U.S. at 419

5

(Scalia, J., dissenting), that is characterized by a total "absence of standards for the guidance of the [executive's] action," *Yakus*, 321 U.S. at 426, it does not delegate legislative power.

**II.      The OSH Act supplies intelligible principles that sufficiently guide the executive in promulgating permanent safety regulations.**

**A.** The OSH Act creates "a comprehensive regulatory scheme designed 'to assure so far as possible … safe and healthful working conditions' for 'every working man and woman in the Nation.'" *Martin v. OSHRC*, 499 U.S. 144, 147 (1991) (omission in original; quoting 29 U.S.C. § 651(b)). In furtherance of this goal, the OSH Act requires an employer to provide "employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654(a)(1). It also empowers the Secretary of Labor to promulgate binding "occupational safety or health standard[s]," *id.* § 655(b), that are "reasonably necessary or appropriate to provide safe or healthful employment and places of employment," *id.* § 652(8); *see id.* §§ 654(a)(2), (b).

These provisions set out Congress's "general policy" of ensuring safe and healthy working conditions. *Am. Power & Light*, 329 U.S. at 105. They establish that the Department of Labor is "the public agency which is to apply" that policy. *Id.* And they empower the agency to promulgate standards that reasonably advance the OSH Act's legislative aims. The statutory grant of regulatory authority thus precisely satisfies the intelligible principle test's demands, as every court of appeals that has considered the issue has held. *See Allstates Refractory Contractors*, 79 F.4th at 759; *Nat'l Maritime Safety Ass'n v. OSHA*, 649 F.3d 743, 755–56 (D.C. Cir. 2011); *Blocksom & Co. v. Marshall*, 582 F.2d 1122, 1125–26 (7th Cir. 1978).

Plaintiffs' argument that the OSH Act lacks an intelligible principle to guide OSHA's promulgation of permanent safety standards rests on a distorted reading of the statute. Focusing narrowly on the words "reasonably necessary or appropriate," Plaintiffs read the OSH Act to

confer "unfettered discretion" on OSHA to do essentially "anything" with respect to workplace safety. Pls. Br. 20. The statute does not reasonably support that reading.

"[A] nondelegation inquiry always begins (and often almost ends) with statutory interpretation" of the relevant text "alongside its context, purpose, and history." *Gundy*, 588 U.S. at 135–36 (plurality opinion). Here, these interpretive tools demonstrate that Congress's directive that OSHA promulgate workplace-safety rules does not give the agency "free rein." Pls. Br. 22 (quoting *Gundy*, 588 U.S. at 151 (Gorsuch, J., dissenting)); *see NBC v. United States*, 319 U.S. 190, 216 (1943) (warning that a broad statutory grant of executive authority "is not to be interpreted as setting up a standard so indefinite as to confer an unlimited power" but must be "interpreted by its context" (quoting *Fed. Radio Comm'n v. Nelson Bros. Bond & Mortg. Co.*, 289 U.S. 266, 285 (1933))). Instead, the OSH Act tasks OSHA with a specific goal—ensuring "safe or healthful employment and places of employment"—and directs the promulgation of standards that are "reasonably" calculated to further that goal. 29 U.S.C. § 652(8); *see id.* § 651(b) (stating statutory purpose of ensuring "safe and healthful working conditions" for all American workers "so far as possible").

The OSH Act guides OSHA's exercise of this authority in meaningful ways. To begin, the statute provides that the regulatory starting point under the OSH Act should be "national consensus" standards that had been "adopted and promulgated by a nationally recognized standards-producing organization" and certain "established Federal" standards already in effect. *Id.* §§ 652(9)–(10); *see id.* § 655(a). The statute required OSHA to promulgate these standards (or, in case of a conflict, whichever standard "assure[d] the greatest protection of … safety or health") "by rule … as an occupational safety or health standard" soon after the Act's passage, unless OSHA "determine[d] that the promulgation of such a standard would not result in

7

improved safety or health." *Id.* § 655(a). And as for safety standards crafted by OSHA, the statute provides that, if OSHA promulgates a standard that "differs substantially from an existing national consensus standard," OSHA must explain "why the rule as adopted will better effectuate the [OSH Act's] purposes … than the national consensus standard." *Id.* § 655(b)(8).

Plaintiffs view OSHA's authority to codify existing "national consensus standards" as a distinct (and unchallenged) form of regulatory authority from OSHA's power to promulgate its own standards. Pls. Br. 3. But in so doing, Plaintiffs ignore the relationship that Congress drew between these two forms of regulatory authority and, more specifically, Congress's directive that OSHA, where possible, should take the path that maximizes workplace safety. As the Seventh Circuit has stated, it is "perfectly clear" from the OSH Act's text that "Congress has chosen a policy and announced general standards which guide the Secretary in establishing specific standards to assure the safest and healthiest possible working environments." *Blocksom & Co.*, 582 F.2d at 1126.

Further constraining the agency, the OSH Act provides that regulatory standards must be "reasonably necessary or appropriate" to further the Act's purpose of maximizing workplace safety. 29 U.S.C. § 652(8). Although Plaintiffs contend that "just about anything would meet that definition," Pls. Br. 19, courts routinely engage in meaningful assessment of the reasonableness of governmental action in relation to specific policy aims. *See*, *e.g.*, *Sveen v. Melin*, 584 U.S. 811, 819 (2018) (considering whether a state law was "drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose'" (quoting *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411–12 (1983))); *United States v. Edge Broad. Co.*, 509 U.S. 418, 429 (1993) (describing cases that "require a fit … that is not necessarily perfect, but reasonable" between the government's actions and goals).

With respect to the OSH Act in particular, courts—including the Fifth Circuit—have interpreted the OSH Act's reasonableness language to incorporate a substantive requirement that a safety standard's costs must be reasonably proportionate to its benefits. *See*, *e.g.*, *Ala. Power Co. v. OSHA*, 89 F.3d 740, 746 (11th Cir. 1996); *Nat'l Grain & Feed Ass'n v. OSHA*, 903 F.2d 308, 311 (5th Cir. 1990) (per curiam); *UPS of Ohio, Inc. v. OSHRC*, 570 F.2d 806, 811–12 (8th Cir. 1978); *cf. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am., UAW v. OSHA*, 938 F.2d 1310, 1319 (D.C. Cir. 1991) (holding that "[c]ost-benefit analysis is certainly consistent" with the OSH Act's reasonableness language); *Donovan v. Castle & Cooke Foods*, 692 F.2d 641, 649 (9th Cir. 1982) (same). And the Supreme Court has read the language to require that OSHA standards be technologically and economically feasible. *Am. Textile Mfrs. Inst., Inc. v. Donovan* (*Cotton Dust*), 452 U.S. 490, 513 n.31 (1981).

"In short, 'reasonably necessary or appropriate,' in context, means that the standards adopted should be needed to improve safety but not to the exclusion of all else." *Allstates Refractory Contractors*, 79 F.4th at 765. "This is not a broad, discretionary purpose statement but a real standard to guide the agency's actions." *Id.*

Just as the OSH Act creates substantive standards to guide OSHA's rulemaking under section 655(b), it also limits when OSHA may exercise its regulatory authority in the first place: "[B]efore [s]he can promulgate *any* permanent health or safety standard, the Secretary is required to make a threshold finding that a place of employment is unsafe—in the sense that significant risks are present and can be eliminated or lessened by a change in practices." *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.* (*Benzene*), 448 U.S. 607, 642 (1980) (plurality opinion). A majority of the Supreme Court has embraced this significant-risk requirement. *See Cotton Dust*, 452 U.S. at 513 n.32; *Nat'l Maritime Safety Ass'n*, 649 F.3d at 750 & n.8 (acknowledging

9

the requirement's majority support). The Fifth Circuit has done the same. *See Nat'l Grain & Feed Ass'n v. OSHA*, 866 F.2d 717, 727 (5th Cir. 1988) (stating that "OSHA must make a threshold showing that a significant risk of either health impairment or job safety exists" and calling this requirement a "limit" on "OSHA's power to set protective standards").

Plaintiffs maintain that the OSH Act's "significant risk" constraint is a "self-imposed requirement[]" voluntarily adopted by OSHA, not a constraint imposed by Congress. Pls. Br. 25. The Supreme Court disagrees. In identifying this constraint, the *Benzene* plurality examined the OSH Act's text, structure, purpose, and history, and concluded that the statute cannot be read to direct OSHA to create regulations aimed at "guarantee[ing] workplaces that are free from any risk of material health impairment, however small." 448 U.S. at 641; *see id.* at 642–52; *Tex. Indep. Ginners Ass'n v. Marshall*, 630 F.2d 398, 400 (5th Cir. 1980) ("The Supreme Court recently ruled that *the* [*OSH*] *Act* requires OSHA to provide substantial evidence that a significant risk of harm arises from a workplace or employment." (emphasis added)). And while Plaintiffs reject the courts' authority to "read[] … limitations into the Act's text," Pls. Br. 25, this Court is bound by the authoritative constructions of the OSH Act announced by the Supreme Court and the Fifth Circuit—constructions that include not only the "significant risk" requirement, but also the technological and economic feasibility requirements, *Cotton Dust*, 452 U.S. at 513 n.31, and the requirement of a reasonable relationship of costs to benefits, *Nat'l Grain & Feed Ass'n*, 903 F.2d at 311; *see Tex. Indep. Ginners Ass'n*, 630 F.2d at 401 ("[T]he Act also compels OSHA to adduce substantial evidence that the costs imposed by a regulation bear a reasonable relation to the benefits derived.").

A wealth of judicial authority enforcing these statutory constraints further belies Plaintiffs' contention that the OSH Act imposes "no limit at all" on the executive's regulatory

10

role. Pls. Br. 26. Courts have invalidated safety standards when OSHA failed to show that they advanced workplace safety beyond existing national consensus standards, *Am. Fed. of Labor & Congress of Indus. Orgs. v. Brennan*, 530 F.2d 109, 124 (3d Cir. 1975), or that they were technologically feasible, *Nat'l Maritime Safety Ass'n*, 649 F.3d at 752–54. Courts have invalidated safety standards that bore an insufficient nexus to the sort of workplace "problem[s] that Congress delegated to OSHA to remedy." *Forging Indus. Ass'n v. Sec'y of Labor*, 748 F.2d 210, 215 (4th Cir. 1984).[4] And courts have vacated regulatory citations where OSHA's application of its safety standards rested on an unreasonable "cost-risk analysis." *Trinity Marine Nashville, Inc. v. OSHRC*, 275 F.3d 423, 429 (5th Cir. 2001). Indeed, contrary to Plaintiffs' argument that the OSH Act's reasonableness requirement lacks a "meaningful anchor to any concrete policy objective," Pls. Br. 26, the Fifth Circuit has invalidated OSHA standards where the agency has failed to provide "substantial evidence that they will ameliorate a significant risk to workers' health or safety and that they are reasonably necessary and appropriate by virtue of the regulatory benefits being reasonably related to the consequent costs." *Tex. Indep. Ginners Ass'n*, 630 F.2d at 413 (footnote omitted).

These examples underscore the critical point: Courts' routine enforcement of the limits that Congress built into the OSH Act makes clear that the statute is not characterized by an "absence of standards" that makes it "impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed." *Yakus*, 321 U.S. at 426. Under the Supreme Court's precedents, then, the statute is not an unlawful delegation of legislative power.

---

[4] Although *Forging Industry Association* addressed OSHA's update to an established federal standard and not a regulation promulgated under section 655(b), the workplace-nexus requirement derives from section 655(b)'s requirement that all OSHA regulations address "*occupational* safety or health." *Nat'l Fed. of Indep. Bus. v. Dep't of Labor*, 595 U.S. 109, 119 (2022) (per curiam) (emphasis in original; quoting 29 U.S.C. § 655(b)).

11

**B.** Plaintiffs would require Congress to provide more granular guidance as to how OSHA should exercise its regulatory authority. For example, they object that the promulgation of safety standards under section 655(b) "requires value judgments, tradeoffs, and balancing of social costs" related to "the acceptable level and degree of risk in the workplace" and "the economic cost … that industries must bear." Pls. Br. 22. The Supreme Court, though, has been clear that Congress need not constrain executive discretion so minutely. *See Gundy*, 588 U.S. at 147–48 (plurality opinion) (observing that statutes authorizing executive officials to make practical judgment calls "are ubiquitous in the U.S. Code"); *Whitman*, 531 U.S. at 475 (noting that "even in sweeping regulatory schemes" the Supreme Court has "never demanded" that Congress "provide a 'determinate criterion' for saying 'how much [of the regulated harm] is too much'" (alteration in original; quoting *Am. Trucking Ass'ns, Inc. v. EPA*, 175 F.3d 1027, 1034 (D.C. Cir. 1999) (per curiam))).

As Justice Scalia recognized, "a certain degree of discretion, and thus of lawmaking, *inheres* in most executive or judicial action, and it is up to Congress, by the relative specificity or generality of its statutory commands, to determine—up to a point—how small or how large that degree shall be." *Mistretta*, 488 U.S. at 417 (Scalia, J., dissenting). If, as Plaintiffs suggest, legislation were required to define the details of matters such as the contents and frequency of tractor-safety training programs, *see* Pls. Br. 20, "Congress simply [could not] do its job," *Mistretta*, 488 U.S. at 372. It is thus sensible, if not inevitable, that Congress entrusted such interstitial decision-making to an expert body tasked with executing Congress's "broad general directives." *Id.*; *see United States v. Rock Royal Co-op*, 307 U.S. 533, 574 (1939) ("It is well settled … that it is no argument against the constitutionality of an act to say that it delegates broad powers to executives to determine the details of any legislative scheme.").

12

Plaintiffs cite Justice Rehnquist's *Benzene* concurrence for the proposition that Congress cannot leave "hard policy choices" to executive agencies. Pls. Br. 23. Even putting aside that the concurrence of a single Justice cannot overcome the long line of majority opinions that hold otherwise, Plaintiffs misconstrue the concurrence. The opinion does not suggest that Congress impermissibly delegates power whenever it authorizes the executive to make policy judgments in the implementation of legislative directives. Rather, Justice Rehnquist's opinion principally addresses a statutory provision regarding standards applicable to workplace exposures to toxic substances, not at issue here, that he thought "admonish[ed] the Secretary [of Labor] to adopt the most protective standard if he [could]" but at the same time "excus[ed] him from that duty" altogether if he could not. *Benzene*, 448 U.S. at 675 (Rehnquist, J., concurring in the judgment). Faced with a statutory provision that supposedly sent the executive conflicting messages by first setting out a policy of maximum workplace protections and then immediately undercutting that policy by seeming to let the executive "reject a more protective standard … for any reason whatsoever," *id.* at 682, Justice Rehnquist would have held the provision insufficiently intelligible to guide executive action, *id.* at 685–86. As he later elaborated, though, his difficulty was *not* that the provision contained an excessively "general standard" but that he thought it reflected deliberate congressional opacity on "whether the Secretary should be either mandated, permitted, or prohibited from undertaking a cost-benefit analysis." *Cotton Dust*, 452 U.S. at 547–48 (Rehnquist, J., dissenting). The Fifth Circuit, though, has held that the OSH Act does demand a cost-benefit analysis. *See Nat'l Grain & Feed Ass'n*, 903 F.2d at 311. The *Benzene* concurrence does not suggest that anything more is required.

Finally, Plaintiffs suggest that Congress was required to be "more precise" in section 655(b) because the promulgation of workplace-safety standards is uniquely "consequential." Pls.

13

Br. 23 (emphasis omitted). Congress, though, *has* been precise in answering (in the affirmative) the consequential policy question that the OSH Act resolves: whether "nearly every employer in the United States" should be subject to binding federal "workplace safety standards." *Id.* Meanwhile, although each of the individual standards that OSHA promulgates to implement Congress's directive incrementally advances workplace safety, Plaintiffs do not contend that any given one touches on a matter of particular significance. *See*, *e.g.*, 29 C.F.R. § 1910.23 (setting ladder-safety standards); *id.* § 1910.140 (requiring certain fall-protection measures); *id.* § 1910.147 (setting standards for working with machines that could cause injury by starting unexpectedly). And, contrary to Plaintiffs' suggestion, *see* Pls. Br. 23, the fact that these targeted, hazard-specific regulations apply to a wide range of employers and a wide range of workplace hazards makes it all the more appropriate for Congress to assign their development to a specialized agency with the flexibility to address a diverse range of on-the-ground realities. *Cf. Mistretta*, 488 U.S. at 379 (upholding as "especially appropriate" Congress's delegation of authority to an expert body to "[d]evelop[] proportionate penalties for hundreds of different crimes by a virtually limitless array of offenders").

**C.** The ordinary tools of statutory construction, together with Supreme Court and Fifth Circuit precedent interpreting section 655(b), establish that the OSH Act supplies intelligible principles to guide executive action and does not delegate legislative power. Principles of constitutional avoidance, moreover, underscore that Plaintiffs' facial challenge must fail.

The law review article on which Plaintiffs rely acknowledges that the "best response" to any perceived nondelegation issue with section 655(b) would be to assign the provision an available limiting construction rather than taking the "aggressive" step of invalidating it. Cass R. Sunstein, *Is OSHA Unconstitutional?*, 94 Va. L. Rev. 1407, 1410–12 (2008), *cited in* Pls. Br. 21–

14

22. Accordingly, even if Plaintiffs had offered a reading that suggested an unconstitutional delegation, their challenge would fail because the statute can plausibly be read to confer a sufficiently narrow grant of discretion. After all, "[w]hen 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that [the Supreme] Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). This principle applies as much to nondelegation concerns as to any other form of constitutional doubt. *See Benzene*, 448 U.S. at 646 (plurality opinion) (explaining that "[a] construction of the [OSH Act] that avoids th[e] kind of open-ended grant" that raises nondelegation issues "should certainly be favored"); *Nat'l Cable Television Ass'n v. United States*, 415 U.S. 336, 342 (1974) (reading a statute "narrowly to avoid [nondelegation] problems").

Because Plaintiffs do not challenge any specific OSHA regulation as exceeding the agency's statutory authority, this Court need not consider the precise contours of that authority. Rather, this Court can reject Plaintiffs' facial challenge simply by observing that the OSH Act is best read, and can easily be construed, to place constitutionally sufficient limits on the executive's discretion in promulgating permanent safety regulations.

## III.   Accepting Plaintiffs' argument would contravene an entire body of settled law.

Despite Plaintiffs' efforts to cast section 655(b) as uniquely unbounded, section 655(b) fits squarely within the body of "broad general directives" the Supreme Court has routinely upheld. *Mistretta*, 488 U.S. at 372. Invalidating that provision would contravene several binding precedents.

For example, in *Whitman*, the Supreme Court upheld the Clean Air Act's direction that the Environmental Protection Agency set air-quality standards "'requisite to protect the public health' with 'an adequate margin of safety.'" 531 U.S. at 465 (quoting 42 U.S.C. § 7409(b)(1)). In *National Broadcasting Co.*, the Court approved executive authority to regulate national radio services in the "public interest." *See* 319 U.S. at 215–17. And in *New York Central Securities Corp. v. United States*, 287 U.S. 12 (1932), it likewise approved executive authority to approve railroad acquisitions in the "public interest." *See id.* at 24–25. Similarly, *Yakus* approved a congressional delegation to the executive to set "fair and equitable" commodity prices during wartime, 321 U.S. at 423, and the Supreme Court has accepted the executive's authority to set "just and reasonable" rates in multiple other contexts. *See*, *e.g.*, *Fed. Power Comm'n v. Hope Natural Gas Co.*, 320 U.S. 591, 600–02 (1944) (wholesale natural gas prices); *Tagg Bros. & Moorhead v. United States*, 280 U.S. 420, 439–40 (1930) (certain stockyard services); *J.W. Hampton*, 276 U.S. at 407–08 (interstate carriage). The list of broad statutory standards that have survived nondelegation challenges could go on. *See*, *e.g.*, *Whitman*, 531 U.S. at 474–76 (citing several more); *Yakus*, 321 U.S. at 426–27 (citing still more).

Plaintiffs ignore these precedents. Indeed, the only case that Plaintiffs acknowledge as upholding a grant of regulatory authority to an executive agency is the Supreme Court's decision last Term in *FCC v. Consumers' Research*. In that case, the Court held that Congress did *not* delegate legislative power by authorizing the Federal Communications Commission (FCC) to collect monetary contributions from telecommunications carriers in an amount that is "sufficient" to fund programs for "preserv[ing] and advanc[ing] universal [telecommunications] service" and so to "advance universal service." 606 U.S. at 666–67 (quoting 47 U.S.C. §§ 254(d)–(e)). Comparing section 655(b) to the statutory grant of authority upheld in

16

*Consumers' Research*, Plaintiffs contend that the latter guides executive discretion more closely than the former. *See* Pls. Br. 17–24. Even on its own terms, this argument is dubious. It is hardly obvious, for example, that a statute authorizing the FCC to collect funds "sufficient" to promote universal telecommunications service offers more guidance than a statute authorizing OSHA to promulgate standards that are "reasonably necessary or appropriate" to promote workplace safety. But irrespective of how the OSH Act compares to the statute at issue in *Consumers' Research*, the vast body of other nondelegation precedents requires rejection of Plaintiffs' claim.

Notably, over the course of nearly a century, the Supreme Court has identified "only two statutes" that unconstitutionally delegate legislative power. *Whitman*, 531 U.S. at 474. In *Panama Refining*, the Court discerned a nondelegation problem where a statute identified the policy question of whether to prohibit interstate transportation of "hot oil," but then granted the President "unlimited authority to determine the policy and to lay down the prohibition, or not to lay it down, as he may see fit," without stating "whether or in what circumstances or under what conditions the President" was to enact the prohibition. 293 U.S. at 415. And in *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), the Court held that Congress had impermissibly delegated authority by authorizing the executive to pass "whatever" industrial codes might "tend to effectuate" any one of a "broad range of objectives," such as ensuring a free flow of commerce, promoting industrial capacity, fostering labor-management harmony, eliminating unfair commercial practices, reducing unemployment, conserving natural resources, and increasing domestic consumption and purchasing power. *Id.* at 534–35; *see id.* at 551. Unlike the statute in *Panama Refining*, the OSH Act does not leave the executive branch free to act or not act as it wishes. *See supra* Part II; *see also Int'l Union*, 938 F.2d at 1317–18 (recognizing that the OSH Act would create a nondelegation problem if it permitted OSHA to decide whether

17

to respond to a recognized safety hazard by regulating or by "do[ing] nothing at all," but holding that the statute should not be construed that way). Unlike the statute in *A.L.A. Schechter*, the OSH Act requires executive action to reasonably further a discrete, clearly defined objective.

Ultimately, Plaintiffs' gripe is with the intelligible principle test itself. As they see it, "Congress—and only Congress—must make policy judgments." Pls. Br. 28. Embracing that view would rupture settled historic practice, render government functionally unworkable, and contravene a century-long string of Supreme Court precedent. This Court should reject it.

## CONCLUSION

This Court should deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion.

Dated: March 25, 2026                    Respectfully submitted,

                                         /s/ Jeremi Young
                                         Jeremi Young, TX SBN 24013793
                                         Young Firm, PC
                                         301 South Polk Street, Suite 320
                                         Amarillo, TX 79101
                                         Phone: (806) 331-1800
                                         Fax: (806) 398-9095
                                         jyoung@youngfirm.com

                                         Nicolas A. Sansone
                                         (*pro hac vice* application pending)
                                         D.C. Bar No. 1686810
                                         Public Citizen Litigation Group
                                         1600 20th Street NW
                                         Washington, DC 20009
                                         Phone: (202) 588-1000
                                         nsansone@citizen.org

                                         *Counsel for Amicus Curiae*
                                         *Public Citizen*

18